**In the Matter of the WELFARE OF K.J.K., a minor.**

Nos. C7–84–800, CX–84–824.

Court of Appeals of Minnesota.

Oct. 30, 1984.

Petition for Review Withdrawn Jan. 4, 1985.

C. Paul Jones, Minn. State Public Defender, Susan K. Maki, Asst. State Public Defender, Minneapolis, for appellant.

David C. Johnson, Koochiching County Atty., International Falls, Hubert H. Humphrey, III, Atty. Gen., Paul R. Kempainen, Sp. Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by FORSBERG, P.J., and SEDGWICK and LANSING, JJ., with oral argument waived.

## OPINION

LANSING, Judge.

K.J.K. appeals from two juvenile court orders referring him for prosecution as an adult as provided by Minn.Stat. § 260.125, subd. 2(d) (Supp.1983), for the offenses of unauthorized use of a motor vehicle and felonious possession of stolen property. K.J.K. contends that (1) the State failed to prove by clear and convincing evidence that he is not suitable for treatment in the juvenile system, and (2) prosecution as an adult would violate the constitutional prohibition against double jeopardy. We affirm.

## FACTS

On October 14, 1983, a delinquency petition charging K.J.K. with unauthorized use of a motor vehicle in violation of Minn.Stat. § 609.55, subd. 2 (1982), and a motion to refer him for prosecution as an adult were filed in Koochiching County Court. According to the petition, K.J.K. admitted taking an automobile from Williston, North Dakota, and driving it to International Falls, Minnesota. At the time of this offense K.J.K. was 17 years and 5 months old.

On October 28, 1983, the juvenile court held a hearing on the reference motion, during which K.J.K.'s probation officer, Dennis Maloney, testified. Maloney said that he had supervised K.J.K. for four years and concluded that K.J.K. had exhausted the resources of the juvenile correction system. The court ordered K.J.K. to enter in-patient chemical dependency treatment and also verbally ordered the reference hearing continued until the treatment was completed.

The court erroneously filed an order on this date adjudicating K.J.K. delinquent for the offense charged. That error was discovered and corrected on November 14, 1983, when the court issued an amended order continuing the reference hearing and deleting the adjudication of delinquency.

Three days after the initial hearing a delinquency petition was filed in Beltrami County Juvenile Court charging K.J.K. with attempting to procure an alcoholic beverage while under age 19. The matter was referred to the Koochiching County Juvenile Court for disposition.

In November 1983 K.J.K. entered a chemical dependency program at Central Mesabi Treatment Center. He completed the in-patient portion and was discharged to a halfway house in Duluth for a 30-day program, which he failed to complete. Another reference hearing was held on February 15, 1984, at which K.J.K. stated his intention to move to Iron Mountain to live with a woman he had met during treatment at Central Mesabi. The court took the motion under advisement. K.J.K. was returned to his mother's home.

On April 6, 1984, a Koochiching County deputy sheriff discovered K.J.K. asleep in a running car parked along Highway 53. The car contained stolen power tools. Another delinquency petition was filed on April 9 charging K.J.K. with felonious possession of stolen property in violation of Minn.Stat. § 609.52, subd. 2(1) (1982), along

with a motion to refer him for prosecution as an adult. At the time of this offense appellant was 17 years and 11 months old.

On April 9 the juvenile court signed an order referring K.J.K. for prosecution as an adult in connection with the unauthorized use of a motor vehicle charge. On May 1, after another reference hearing in which Maloney again testified, the court issued a similar order regarding the felonious possession charge. Both orders are the subject of this appeal.

## ISSUES

1. Did the juvenile court err in referring appellant for prosecution as an adult on the ground that he is not suitable for treatment in the juvenile system?

2. Did jeopardy attach after the reference hearing when the juvenile court mistakenly entered an order adjudicating appellant delinquent rather than restating the court's verbal order for a continuance?

## ANALYSIS

### I

■ K.J.K. contends the juvenile court's decision to refer him for adult prosecution was an abuse of discretion because the State did not sustain its burden of showing he is not suitable for treatment in the juvenile system. In a reference proceeding the State has the burden of proving by clear and convincing evidence that the child is not suitable for treatment as a juvenile or that public safety will not be served by retaining the child in the juvenile system. Minn.Stat. § 260.125, subd. 2(d) (Supp. 1983); Minn.R.P.Juv.Cts. 32.05, subd. 2. Minn.Stat. § 260.125, subd. 3 (1982), lists a number of "prima facie" cases where the child is not suitable or the public is not served by treatment in the juvenile system. If none of these circumstances exist, the court must consider the totality of the circumstances. Minn.R.P.Juv.Cts. 32.05, subd. 2. The court has broad discretion in determining whether a juvenile is suitable for treatment in the juvenile system, and its decision will not be overturned unless it

is clearly erroneous. *In re Welfare of Hartung,* 304 N.W.2d 621, 624 (Minn.1981); *In re Welfare of I.O.S.,* 309 Minn. 78, 86–87, 244 N.W.2d 30, 38 (1976).

### *Juvenile Court Record*

The record shows that K.J.K. has had the following contacts with the juvenile system in addition to the offenses described above:

In 1978, at age 12, he was placed in a county-operated group home in International Falls for forging checks.

In February 1980 he was adjudicated delinquent and placed in a foster home after being charged with unauthorized use of a motor vehicle in violation of Minn.Stat. § 609.55, subd. 2, and burglary in violation of Minn.Stat. § 609.58, subd. 2(3).

Approximately one week later K.J.K. and another boy took another vehicle without permission. K.J.K. was then placed in a group home called Frontier Farm. While visiting his parents in June 1980 he broke into a neighbor's home and removed a tape player and five bottles of beer. He was not charged for these offenses.

In September 1980 he was placed in foster care, where he remained until February 1981. At that time he and some other foster children ran away, and he was subsequently adjudicated delinquent for unauthorized use of a motor vehicle and burglary and placed in a 90-day program at Thistle Dew Camp.

Just before his graduation from Thistle Dew Camp K.J.K. was involved in a theft from a public campground and ordered to complete another 90-day program at Thistle Dew. He returned to his mother's home in September 1981.

In July 1982 he was adjudicated delinquent for a violation of the open bottle law, Minn.Stat. § 169.122 (1982), and ordered to complete a 40-hour work service program. In October 1982 he was charged with misdemeanor theft of gasoline and fishing tackle, but court records do not indicate the disposition of this matter.

In January 1983 he was adjudicated delinquent for illegal consumption of alcohol, careless driving, and obstruction of legal process. He was again ordered to complete a work service program that was stayed on the condition that he attend school regularly and complete an out-patient chemical dependency treatment program.

In February 1983 he was arrested for disorderly conduct. He was placed in the Arrowhead Juvenile Center for 90 days in March because of numerous probation violations, including his failure to attend school or participate in the treatment program.

After his release in July 1983 K.J.K. violated his probation by quitting school and leaving Minnesota without the permission of his probation officer. He has served 60 days in county jail for various misdemeanor traffic violations.

---

The court's memoranda state that the following factors controlled its decision: K.J.K.'s long history of contact with the juvenile court, the probation officer's testimony that K.J.K. was not suitable any longer for treatment as a juvenile, and the fact that juvenile programs had not had any effect on his "propensity to violate the laws."

K.J.K. argues that the court erred in failing to consider other factors enumerated in Rule 32.05 of Minnesota Rules of Procedure for Juvenile Courts, such as the nonviolent nature of his offenses and the possibility that commitment to the Commissioner of Corrections would provide appropriate treatment and control. The rule states that a court may consider those factors; it does not mandate the weight a court must assign them.

We conclude, based on the totality of the circumstances, that the juvenile court did not clearly err. K.J.K.'s history and juvenile court records show that he has received and rejected almost every form of treatment available in the juvenile system. *See I.O.S.*, 309 Minn. at 90, 244 N.W.2d at

40. He has been detained in the Arrowhead Juvenile Center numerous times; resided in group homes, a foster home, and a halfway house; participated twice in an outdoor camp program; completed two work service programs; and received both in-patient and out-patient treatment for chemical dependency.

Furthermore, an offender's age and the juvenile court's ability for treatment before age 19 are proper factors to consider in making a reference decision. Minn.R.P.Juv.Cts. 32.05, subd. 2(k); *In re Welfare of Haaland*, 346 N.W.2d 190, 193 (Minn.Ct.App.1984). At the time of the first reference order K.J.K. was 17 years and 10 months old. At the time of the second order his eighteenth birthday was only three weeks away. K.J.K. had repeatedly violated the law and the terms of his probation while being supervised by the juvenile court. After this history of failure, the court could rationally conclude that he would not be rehabilitated before he turned 19.

Even if K.J.K.'s major problem is not criminality but chemical dependency, as he argues, there are treatment programs available in the adult corrections system. The court's decision to refer him for prosecution as an adult was not an abuse of discretion.

## II

K.J.K. also contends that jeopardy attached when the trial judge erroneously signed an order adjudicating him delinquent for unauthorized use of a motor vehicle on October 28, 1983.

Jeopardy attaches at an adjudicatory hearing when a trier of fact begins to hear evidence. *Breed v. Jones*, 421 U.S. 519, 531, 95 S.Ct. 1779, 1786, 44 L.Ed.2d 346 (1975). The record clearly shows that the court did not hear any evidence on the charge of unauthorized use of a motor vehicle; the purpose of the hearing was to decide whether he should have been referred for prosecution as an adult. The court gave a verbal order to continue the

reference matter until his chemical dependency treatment was completed. The error was later discovered and corrected. *See* Minn.R.Crim.P. 27.03, subd. 8. There was no consideration of the substantive charge, and therefore jeopardy did not attach.

### DECISION

The juvenile court did not abuse its discretion in referring appellant for prosecution as an adult because there was clear and convincing evidence that he is no longer suitable for treatment in the juvenile system. Jeopardy did not attach when the trial court erroneously signed an order adjudicating him delinquent because the record shows that no evidence was heard on the substantive charge.

Affirmed.