In the Matter of the
WELFARE OF P.L.M.

No. C3-85-609.

Court of Appeals of Minnesota.

Oct. 29, 1985.

Review Denied Dec. 30, 1985.

William R. Kennedy, Hennepin County Public Defender, Philip D. Bush, Asst. Public Defender, Minneapolis, for appellant P.L.M.

Hubert H. Humphrey, III, State Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, Michael Richardson, Asst. Co. Atty., Minneapolis, for respondent Hennepin County.

Heard, considered and decided by SEDGWICK, P.J., and LESLIE and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

This appeal is from an order adjudicating appellant delinquent. The trial court found by written order the petition charging appellant with assault in the fifth degree proven beyond a reasonable doubt. We affirm.

## FACTS

Appellant P.L.M., a fourteen year old juvenile, was charged in Hennepin County Juvenile Court with assault in the fifth degree on a complaint he hit another juvenile, C.A.D., at school. P.L.M. denied the petition and a trial without a jury was held.

Considerable dispute arose as to how the incident occurred.

At the close of testimony and after final arguments, the following discussion took place between the court and counsel for either side.

THE COURT: Well sometimes courts need more information. It is kind of hard for me to fathom exactly what happened. If [C.A.D.] was hit while he was on the ground or if he was standing up, or if he was on a landing. I think he got hit, but I don't think the State has proven to me beyond a reasonable doubt that [P.L.M.] did it deliberately.

I am not sure where it happened. I am not sure if he was on his back, if he was standing up.

I'm going to find the Petition not proven beyond a reasonable doubt.

MS. GRAHAM: Your Honor, he testified he was standing up struggling with the drumsticks.

THE COURT: He didn't say if he was standing up. Let me take a look back here a second.

MS. GRAHAM: I asked him where [P.L.M.] was standing in relation to him and where the other person was standing in relation to him.

THE COURT: Let me take a look at my notes a little more and I will come up with a decision. I have some trouble trying to fathom where it happened and diagramming and that.

I will notify you both.

Let me take a look at this.

MS. KELLER: Thank you, Your Honor.

On March 6, 1985, the court issued a written order finding the petition proven beyond a reasonable doubt. Appellant appeals claiming the written order was barred by double jeopardy because a final decision was already rendered in the court's previous oral finding.

## ISSUES

1. Was the trial court's reversal in a written order of its previous oral finding that the petition was not proven barred by double jeopardy?

2. Did the prosecutor commit misconduct by arguing the case after an alleged oral finding was made?

## ANALYSIS

1, 2. P.L.M. argues the trial court's reversal of its oral finding that the petition was not proven constituted double jeopardy and that the prosecutor committed misconduct by continuing to argue the case after

the court made its initial determination. Neither argument is persuasive.

To isolate on appeal the recorded discussion between the court and counsel after trial ignores its context and tone. It is apparent throughout the quoted discussion that the court was still in the process of sorting out the facts before rendering its final decision. While "musing aloud" when contemplating a decision is not always recommended, it is nonetheless clear from the tone of the discussion that the court needed additional time to make its finding on a record that had already been completed. The additional comments of Ms. Graham didn't change the substance of the record.

Appellant cites other jurisdictions all of which appear to require an intentional initial court decision before double jeopardy serves to bar a second decision made on the same matter. As stated in *Pugh v. State*, 271 Md. 701, 706, 319 A.2d 542, 545 (1974):

> It is therefore settled that once the trier of fact in a criminal case, whether it be the jury or the judge, intentionally renders a verdict of "not guilty," the verdict is final and the defendant cannot later be retried on or found guilty of the same charge.

(emphasis supplied).

Here there is no indication that the court intentionally rendered a verdict of "not guilty." His statement *"I'm going to find* the Petition not proven beyond a reasonable doubt" (emphasis added) had not been finalized. It was merely in the process of clarification subject to its final decision made several weeks later by written order.

### DECISION

The trial court's written order finding the petition proven beyond a reasonable doubt is not barred by double jeopardy.

Affirmed.

LESLIE, J., dissents.

LESLIE, Judge (dissenting).

The prohibition against double jeopardy is found in both the fifth amendment to the United States Constitution, and article 1, section 7 of the Minnesota Constitution. As the United States Supreme Court has stated, "[t]he right not to be placed in jeopardy more than once for the same offense is a vital safeguard in our society, one that was dearly won and one that should continue to be highly valued." *Green v. United States*, 355 U.S. 184, 198, 78 S.Ct. 221, 229, 2 L.Ed.2d 199 (1957). The prohibition against double jeopardy is "an ancient and well-established public policy that no man should be unduly harassed by the state's being permitted to try him for the same offense again and again until the desired result is achieved." *State v. Thompson*, 241 Minn. 59, 62, 62 N.W.2d 512, 516 (1954). The prohibition against double jeopardy is clearly applicable in juvenile proceedings like the present one. *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980).

The question in this case is whether the trial court's oral statement was a resolution of some or all of the factual elements of the offense charged. *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 571, 97 S.Ct. 1349, 1354, 51 L.Ed.2d 642 (1977). It is clear that the trial court could orally make a binding ruling. Rule 27.06 of the Minnesota Rules of Juvenile Courts states that "[a]ll findings shall be in writing *or on the record.*" (emphasis added). Therefore, it is not determinative that the ruling was oral and not written. *See In the Matter of the Welfare of K.J.K.*, 357 N.W.2d 117 (Minn.Ct.App.1984). It is also unimportant that no judgment of acquital was entered because it is well-established that a verdict of acquital is final and ends a defendant's jeopardy even though judgment is not entered. *Ball v. United States*, 163 U.S. 662, 671, 16 S.Ct. 1192, 1195, 41 L.Ed. 300 (1896).

While the majority warns that passages of the transcript should not be isolated or taken out of context, it proceeds to ignore when the trial court made the statements. The statements were made after both parties presented their evidence, the court personally questioned the parties, and the attorneys made closing arguments. Under

Rule 27.03, Subd. 2(B) of the Juvenile Court Rules, after all evidence is presented the county attorney makes closing arguments and then the child's counsel makes closing arguments. At this point, the proceedings are complete except only for the verdict which the trial court can make orally or in writing any time within fifteen days.

Given the rules of court, it seems clear to me that when the trial court began speaking it was rendering a verdict. The court did not preface its remarks with any words implying that a decision was not going to be made at that time. The trial only lasted one hour, so there was no need for the court to sort out complex legal or factual issues. It seems quite logical that the court would make its decision at that time, while the matter should have been fresh in his mind. It is within this context that we must judge the court's statements.

The record clearly shows that the court had difficulty with the state's case. The court was uncertain exactly what happened and where it happened. The court stated "I think he got hit, but I don't think the State has proven to me beyond a reasonable doubt that [P.M.] did it deliberately." While this might be, as the majority suggests, "musing aloud," the court then clearly and unambiguously stated "I'm going to find the Petition not proven beyond a reasonable doubt."

The majority concludes that the words "I'm going to find" show that the court had not intentionally finalized its decision. Once again the majority fails to heed its own warnings to not isolate the words from their context. In my opinion, there is no difference between saying "I'm going to find," or "I am finding" or "I find." Given the context of the statements, I feel that the court was clearly ruling that appellant was not guilty. This decision was not only intentional, but it was the only logical conclusion given the doubts that the court had with the state's case.

In my opinion, it was improper for the prosecutor to argue with the trial court after it had clearly rendered its decision.

Had this been a jury trial, the prosecutor certainly would not have been allowed to attempt to influence the trier of fact as she did. However, because the appellant was a juvenile he had no right to a jury. The majority now sanctions the prosecutor's behavior even though it clearly would have been inappropriate had this been a jury trial. As this court has stated:

[i]n a court where the defendant does not enjoy a right to trial by jury, the need for the factfinder to exercise, and be seen to exercise, meticulous care to protect the integrity of the trial process cannot be overstated.

*In Re Welfare of A.B.L.*, 358 N.W.2d 417, 422 (Minn.Ct.App.1984). Because the prohibition against double jeopardy was violated and because fundamental fairness requires meticulous care to protect the integrity of the non-jury trial process, I would reverse.