**In re the Matter of the WELFARE OF T.R.C., Child.**

**No. CX–86–1525.**

Court of Appeals of Minnesota.

Jan. 6, 1987.

Heather L. Sweetland, Duluth, for appellant T.R.C.

Alan L. Mitchell, St. Louis Co. Atty., W. Edward Myers, Asst. St. Louis Cty. Atty., Duluth, for respondent St. Louis County.

Considered and decided by HUSPENI, P.J., and SEDGWICK and LANSING, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

Appellant T.R.C. appeals from an order certifying him for prosecution as an adult on seven felony charges. He argues that the trial court abused its discretion in finding that he was not suitable to treatment and that the public safety would not be served by continuing jurisdiction in the juvenile justice system. We affirm.

## FACTS

T.R.C. was born on August 30, 1968, and became 18 years of age on August 30, 1986. On August 7, 1986, a delinquency petition was filed, charging him with three counts of burglary in the third degree, three counts of felony theft and one count of aggravated criminal damage to property.

The state has alleged that T.R.C. entered the Hermantown Education Center in Hermantown on May 18 or 19, 1986, and, after ransacking and vandalizing the building, stole a camera, several radios and a tape recorder worth more than $250. He is also charged with breaking into a garage in Hermantown sometime between July 12 and 14, 1986, and stealing tools and parts with a value of over $17,000. Finally, the state alleges that on May 19, 1986, T.R.C. broke into an automotive center in Hermantown, stealing tools and parts worth more than $11,000, and also broke into cars parked there in order to steal audio systems. Items stolen from these three locations were sold in the Twin Cities and other cities. An adult also allegedly involved in these incidents has confessed and implicated T.R.C. At the time of the incidents, T.R.C. was living independently in an apartment, was no longer a student and had been employed for a period of time.

A motion for a reference from juvenile court was filed, and a contested reference hearing was held on September 3, 1986. T.R.C. waived a showing that there was probable cause to believe that he had committed the offenses charged.

T.R.C. pointed out at the hearing that he does not have a lengthy history of contact with the juvenile justice system. He was adjudicated delinquent of unauthorized use of a motor vehicle in February of 1983 and of shoplifting in June of 1986. He was placed on and completed a period of probation in connection with each of these adjudications. He had also been found guilty of driving while intoxicated in Superior, Wisconsin, in February of 1986 and was charged on May 26, 1986, in Superior on a gross misdemeanor driving while intoxicated.

Although T.R.C. has not been ordered into an alcohol or drug treatment program through the juvenile system, a chemical dependency counselor concluded that T.R.C. is chemically dependent. The counselor recommended a short term residential treatment program, followed by halfway house residency but did not make a recommendation regarding prosecution as an adult.

A psychologist testified that a central problem for T.R.C. is chronic chemical abuse which began when he was twelve or thirteen years old. The psychologist also described T.R.C. as immature for his age, impulsive and as having a problem with adolescent anger. She recommended that he be treated in the juvenile justice system and that the treatment consist of a ninety day in-patient chemical dependency program followed by ninety days at the Thistledew Forestry Camp.

A probation officer recommended certification to the criminal justice system because of T.R.C.'s age, the planning, sophistication and maliciousness of the offenses, the adult attitudes and lifestyle of T.R.C. and poor prognosis for success in any of the juvenile treatment programs available.

After reviewing the recommendations, the court observed:

> In the present case the juvenile does not recognize a CD problem and would be extremely unlikely to remain in, let alone succeed in, an in-patient chemical dependency program for juveniles, unless perhaps the clout available to the adult criminal system is available; i.e., an adult criminal justice system sanction such as incarceration as the sure alternative facing the person as a consequence for failing to successfully participate in and complete an in-patient treatment program. In the case of an eighteen year old who has been living independently as an adult for months, there is no such clout available in the juvenile justice system. None of the regular residential treatment programs such as Woodland Hills or Thistledew that the Court is familiar with would take a person who is already eighteen years old. Moreover, the profile of this juvenile does not suggest to the probation officer or to the Court on the basis of experience that there would be any substantial reasonable hope that a treatment program currently available in the juvenile justice system would work successfully with [T.R.C.].

The court concluded that the evidence clearly and convincingly indicated that T.R.C. is not suitable for treatment in the juvenile justice system and that public safety would not be served by retaining jurisdiction within that system. An order certifying T.R.C. for prosecution as an adult was entered on September 9, 1986. Prosecution has been stayed during the pendency of this appeal.

## ISSUE

Did the trial court abuse its discretion in determining that public safety would not be served by treatment within the juvenile justice system?

## ANALYSIS

█ A juvenile court has considerable latitude in determining if certification for prosecution as an adult will be made, and its decision will not be upset unless its findings are clearly erroneous so as to constitute an abuse of discretion. *In re I.Q.S.*, 309 Minn. 78, 86–87, 244 N.W.2d 30, 38 (1976). A reference may be made only if the court finds probable cause to believe the child committed the offense and that

there is clear and convincing evidence that the child is not suitable to treatment or public safety is not served by such treatment within the juvenile justice system. Minn.Stat. § 260.125, subd. 2. T.R.C. has waived the probable cause showing. Therefore, the state is required to prove either unsuitability to treatment or public safety considerations in order to support a reference. *In re Haaland,* 346 N.W.2d 190, 193 (Minn.Ct.App.1984). There is no necessity to prove both of these elements. *Id.*

Minn.Stat. § 260.125, subd. 3 lists several situations that constitute a prima facie case for reference. None of those situations is present here. Where the state has not established a prima facie case under the statutory provisions, the court shall consider the totality of circumstances. Minn.R.P. Juv.Cts. 32.05, subd. 2. This totality of circumstances includes but is not limited to:

(a) the seriousness of the offense in terms of community protection,

(b) the circumstances surrounding the offense,

(c) whether the offense was committed in an aggressive, violent, premeditated or willful manner,

(d) whether the offense was directed against persons or property, the greater weight being given to an offense against persons, especially if personal injury resulted,

(e) the reasonably foreseeable consequences of the act,

(f) the absence of adequate protective and security facilities available to the juvenile treatment system,

(g) the sophistication and maturity of the child as determined by consideration of the child's home, environmental situation, emotional attitude and pattern of living,

(h) the record of previous history of the child,

(i) whether the child acted with particular cruelty or disregard for the life or safety of another,

(j) whether the offense involved a high degree of sophistication or planning by the child, and

(k) whether there is sufficient time available before the child reaches age nineteen (19) to provide appropriate treatment and control.

*Id.* In considering the totality of the circumstances, the juvenile court is vested with broad discretion in determining whether either of the statutory criteria has been shown. *In re J.B.M.,* 263 N.W.2d 74, 76 (Minn.1978).

The court concluded that "public safety would not be served under the provisions of the laws relating to juvenile court by trying to deal with [T.R.C.] within the juvenile justice system." T.R.C. contends that this conclusion is not supported by findings and is an abuse of the court's discretion.

Juvenile courts should provide a sufficient statement of reasons for and considerations leading to decisions in reference matters. *I.Q.S.,* 309 Minn. at 86, 244 N.W.2d at 38. The findings should demonstrate the court's full investigation of the matter and careful consideration. *Id.* The record must contain direct evidence that the juvenile endangers public safety for the statutory reference standard to be satisfied. *In re Dahl,* 278 N.W.2d 316, 321 (Minn.1979).

The court's findings parallel several of the items included in the totality of circumstances to be considered under Minn.R.Juv. Cts. 32.05, subd. 2, specifically the seriousness of the offense; the circumstances surrounding the offense; whether the offense was committed in a violent, premeditated manner; the reasonably foreseeable consequences of the act; and the high degree of sophistication and planning by the child.

The court found:

that extensive damage was done at the burglary of one of the auto dealerships and that automobile windows were smashed in order to remove property from automobiles. The three burglaries were separate incidents on different dates and at different locations. A basic pattern was involved of breaking in to

property with little regard for damage, removing many thousands of dollars worth of tools and other valuable property, and selling the stolen goods in the Twin Cities and elsewhere * * *. The offenses were premeditated, planned with some degree of care, involved alot of effort, work and coordination, and the criminal activity, including transportation and sale of stolen items, went on for a period of approximately two months.

The evidence shows a pattern of violent activity indicating a disregard for the rights and property of others. Because of the value of the property stolen, the court appropriately considered the offenses to be serious. The court also found that the incidents, occurring in a two-month period, demonstrated a high degree of planning and sophistication, particularly in view of the subsequent sale of the stolen property. These findings are supported by direct evidence and reflect considerations indicating that the public safety would not be served by treating appellant through the juvenile justice system. The court did not abuse its discretion in certifying T.R.C. for prosecution as an adult.

Although the reference order is sustainable solely on public safety considerations, the trial court also concluded T.R.C. is not amenable for treatment within the juvenile justice system. This conclusion was based in part on the unavailability of facilities to treat T.R.C.'s chemical dependency.

It is not necessarily an abuse of discretion to refer a juvenile with a chemical dependency problem for prosecution as an adult. *In re K.J.K.,* 357 N.W.2d 117, 120 (Minn.Ct.App.1984). Nor is it automatically an abuse of discretion to base a reference on the lack of available facilities. *See I.Q.S.,* 309 Minn. at 90, 244 N.W.2d at 40. However, we note that in reaching its conclusion that facilities are not available to successfully treat T.R.C.'s chemical abuse problems, the court did not consider transferring legal custody to the Commissioner of Corrections, an option which would have

been available under Minn.Stat. § 260.185, subd. 1(d) (1984).

We believe a complete evaluation of chemical dependency treatment programs available to the court should include consideration of programs available through the Commissioner of Corrections. This is particularly so where a reference for prosecution as an adult is based upon unavailability of facilities. *See In re J.E.C.,* 302 Minn. 387, 398, 225 N.W.2d 245, 252 (1975). We recognize, of course, that it is within the court's discretion to weigh the appropriateness of transferring legal custody to the Commissioner in each individual case.

Our concern over the court's failure to consider programs available through the Commissioner of Corrections does not, however, merit reversal of this reference order which was based on both unsuitability for treatment and public safety considerations.

### DECISION

The trial court did not abuse its discretion in certifying T.R.C. for prosecution as an adult.

Affirmed.