**In the Matter of the**
**WELFARE OF R.J.C.**

No. C7–87–1170.

Court of Appeals of Minnesota.

Feb. 23, 1988.

William Falvey, Ramsey County Public Defender, Patrick D. McGee, Asst. Public Defender, St. Paul, for appellant R.J.C.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Tom Foley, Ramsey Co. Atty., Steven C. DeCoster, Asst. Co. Atty., St. Paul, for respondent State.

Heard, considered and decided by HUSPENI, P.J., and PARKER and LOMMEN,* JJ.

## OPINION

HUSPENI, Judge.

This is a pretrial appeal by R.J.C., a juvenile who became 19 on December 12, 1987, from a Ramsey county juvenile court order certifying the juvenile for adult prosecution on a charge of assault in the second degree (Minn.Stat. § 609.222; Minn.Stat. § 609.05). Appellant argues that the juvenile court erred (1) in finding that the state made a prima facie showing under Minn. Stat. § 260.125, subd. 3, and (2) in finding that he is not amenable to treatment in the juvenile system. He also argues that a pre-indictment delay was a denial of his due process rights. We affirm.

## FACTS

On August 13, 1986, shortly after midnight, Andrew Thomas Lang was attacked by four youths using baseball bats and clubs. Lang was severely injured in the attack. Two friends, David Ranum and appellant, were with Lang when the attack occurred. However, they ran away from the scene and only Lang sustained injury. Joseph Anthony Vasquez has admitted that he took part in the attack on Lang.

A reference hearing concerning appellant was held on May 13, 1987. Vasquez testified at the hearing that appellant approached him and asked him "to do a job" for fifty dollars. Vasquez testified that appellant wanted him to break the arms and legs of one of appellant's friends because the friend had stolen the tires and C.B. from appellant's truck. Vasquez testified that after some initial reluctance, he bowed to the urging of friends and agreed

to do the job. Vasquez and his friends decided to "do a good job" in the hopes of later obtaining more money from appellant.

According to Vasquez, appellant went to make arrangements to meet Lang. Vasquez and several of his friends followed appellant over to the east side of St. Paul, and moments later observed appellant walking down the street accompanied by two other persons—one with dark hair and the other with light hair. According to Vasquez, appellant had instructed him that it was the one with the light hair whom Vasquez was to attack. Vasquez and several others approached the three and asked them a couple of questions. One of the youths with Vasquez then attacked Lang with a baseball bat while appellant and the other youth ran. Vasquez and his friends continued to beat Lang about the head and kidney area until he was covered with blood.

The juvenile court judge found that probable cause existed to believe that appellant committed the crime of second degree assault. It also found that a prima facie case for certification had been established under Minn.Stat. § 260.125, subd. 3(1), "in that the commission of the offense involved a high degree of sophistication and planning and particular cruelty and disregard for the life or safety of another." Finally, the court found that the psychological evaluation submitted by Dr. Joel Hetler concludes that appellant is not suitable for treatment in the juvenile court system. Based on this, the court certified appellant for prosecution as an adult.

## ISSUES

1. Did the trial court err in finding that the state established a prima facie case for certification under Minn.Stat. § 260.125, subd. 3(1)?

2. Did a pre-indictment delay violate appellant's due process rights?

## ANALYSIS

### I.

■ A juvenile court has considerable latitude in determining if a certification as

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

an adult will be made, and its decision will not be upset unless its findings are clearly erroneous so as to constitute an abuse of discretion. *In re I.Q.S.*, 309 Minn. 78, 86–87, 244 N.W.2d 30, 38 (1976); *Matter of Welfare of T.R.C.*, 398 N.W.2d 662, 664 (Minn.Ct.App.1987). In order for a court to order a reference, it must find that "the child is not suitable to treatment *or* that the public safety is not served under the provisions of laws relating to juvenile courts." Minn.Stat. § 260.125, subd. 2(d)(2) (1986) (emphasis added). There is no necessity to prove both of these elements. *T.R.C.*, 398 N.W.2d at 665.

A prima facie case that the public safety is not served or that the child is not suitable for treatment shall have been established if the child was at least sixteen years of age at the time of the alleged offense and is alleged by the delinquency petition to have committed an aggravated felony against the person and (a) in committing the offense, the child acted with particular cruelty or disregard for the life or safety of another; or (b) the offense involved a high degree of sophistication or planning by the juvenile. Minn.Stat. § 260.125, subd. 3(1). In this case, the court found that both parts of the test for a prima facie case had been met.

### 1. SOPHISTICATION AND PLANNING

The trial court based its finding that the alleged offense involved a high degree of sophistication or planning based on appellant's "going out and getting a Mexican gang [and arranging] to meet by the bridge at Whitall and Burr at midnight." We agree. Not only did appellant allegedly hire someone to assault the victim, but appellant's alleged acts involved devising a plan to ensure that his role in the attack would go undetected. He did this by instructing Vasquez that the light haired person with whom appellant would be walking was the one to be attacked. Further, while the victim was being beaten, appellant ran away. Allegedly this was done to prevent

the victim from suspecting that he had been "set up." We believe that these facts support the finding that appellant acted with a high degree of sophistication.

### 2. PARTICULAR CRUELTY

We also agree with the trial court's finding that appellant's acts exhibited particular cruelty and disregard for the life or safety of another. Vasquez testified that appellant wanted Vasquez to break the victim's arms and legs. The victim received a vicious beating at the hands of the hired gang. While appellant may not have specifically requested that the assault be carried out with weapons, the act of hiring a gang to break someone's arms and legs is sufficient to support a finding of particular cruelty.

We conclude that the state established a prima facie case for certification. As appellant presented nothing to rebut this evidence, we further conclude that the trial court acted properly in certifying appellant to stand trial as an adult.[1]

### II.

The acts which constituted the basis of the petition occurred on August 13, 1986. The police focused their suspicions on appellant almost immediately. A petition charging appellant with delinquency was filed on March 2, 1987. The motion for reference was filed on April 14, 1987. The court granted the state's reference motion on May 14, 1987. This was a total of nine months after the incident occurred; arguably enough time to facilitate appellant's entry into an appropriate program within the juvenile justice system. Appellant claims that had the state moved more quickly in filing the delinquency petition, he could have successfully completed a treatment program in the juvenile system.

Appellant's argument, we believe, raises a due process question. "To establish a violation of the due process clause

---

1. As we hold that the state established a prima facie case for certification under section 260.-125, subd. 3(1), we need not determine whether the testimony of Dr. Hetler established that appellant is unamenable to treatment within the juvenile system. The point is further rendered moot by the fact that appellant has already turned 19.

due to pre-indictment delay, a defendant must prove both actual prejudice and an improper state purpose." *State v. F.C.R.,* 276 N.W.2d 636, 639. While it may be that appellant has suffered actual prejudice as a result of the delay (in that he could no longer be treated in the juvenile system because he became 19 on December 7, 1987), appellant does not allege, nor is there evidence to suggest, the delay was the result of an improper state purpose. While arguably the state may have been able to move more expeditiously in filing the delinquency petition, such filing clearly was made within an acceptable period of time. We cannot find that the state's failure to process the charges against appellant in such a manner as to assure availability of time to treat him within the juvenile justice system amounted to a violation of appellant's right to due process.

## DECISION

The trial court did not err in certifying appellant to stand trial as an adult. Appellant's due process rights were not violated by pre-indictment delay.

Affirmed.