**In the Matter of the Civil COM-
MITMENT OF Terrance
John GIEM.**

No. A06–1588.

Supreme Court of Minnesota.

Dec. 13, 2007.

Mary Margaret Huot, St. Paul, MN, for Appellant.

Margaret Gustafson Samec, Hugo, MN, for Respondent.

## OPINION

GILDEA, Justice.

This case involves the subject matter jurisdiction of the district court to consider Ramsey County's petition to commit appellant Terrance John Giem as a sexual psychopathic personality (SPP) and/or a sexually dangerous person (SDP). Giem contends that the district court lost subject matter jurisdiction over the petition when it did not hold a hearing on the merits of the petition within the deadlines set forth in Minn.Stat. § 253B.08, subd. 1 (2006). The district court and the court of

appeals held that Giem waived the right to have the merits hearing held within the statutory deadlines. Because we hold that the district court did not lose subject matter jurisdiction, but that the court's determination that Giem waived his right to an immediate hearing was clearly erroneous, we affirm in part and reverse in part.

Giem is a Level 3 sex offender. He was scheduled for release from the Minnesota Correctional Facility at Moose Lake on October 27, 2005. But on October 19, Ramsey County petitioned for his civil commitment as an SPP and/or SDP. The district court conducted an initial hearing on the petition on October 26, 2005. At that hearing, Giem's attorney stated, "although [Giem] does not agree with the petition, he would like to have insight into where he's at right now and * * * is willing to go to the security hospital * * *. [H]e's not really in agreement with the petition, but has waived his preliminary hearing." The district court asked Giem, "[D]o you understand what [your attorney] just said" and "is this what you have chosen to do today?" To each question Giem responded, "Yes, Your Honor." The court then scheduled prehearing examinations for November 18, 2005, and asked, "Do we want to try to set a[ ] date [for the merits hearing] at this point?" Giem's attorney

replied, "Your Honor, we'd like to wait with that until after the exam, actually." [1]

The court held a hearing on February 23 for the purpose of scheduling the merits hearing. At that time, Giem moved orally and in writing that the petition be dismissed because 125 days had passed since its filing and the district court had not conducted a merits hearing. Giem's motion was based on section 253B.08, subdivision 1, which provides that "the hearing on a commitment petition * * * shall be held within 90 days from the date of the filing of the petition." [2] In the alternative, Giem demanded that his hearing be held within 5 days of his request. This alternative request was based on the other timing provision in the same subdivision:

> The proposed patient * * * may demand in writing at any time that the hearing be held immediately. Unless the hearing is held within five days of the date of the demand * * * the petition shall be automatically discharged if the patient is being held in a treatment facility pursuant to court order.

Minn.Stat. § 253B.08, subd. 1. There is no dispute that Giem was being held in a treatment facility pursuant to a court order.[3]

At the hearing, Giem's attorney argued that Giem wanted to have the merits hear-

---

1. Three examiners were appointed to evaluate Giem: Dr. Meyers (selected by Giem), Dr. Zeller (selected by the district court), and Dr. Farnsworth (selected by the county). Dr. Meyers conducted his initial examination on November 18, 2005, continued his examination on December 1, and filed his report on April 27, 2006. Dr. Zeller conducted his examination on December 30 and filed his report on April 4, 2006. Dr. Farnsworth examined Giem on December 2 and completed his report on December 6, 2005.

2. The statute provides:
   The hearing on the commitment petition * * * shall be held within 90 days from the

date of the filing of the petition. For good cause shown, the court may extend the time of hearing up to an additional 30 days. The proceeding shall be dismissed if the proposed patient has not had a hearing on a commitment petition within the allowed time.
Minn.Stat. § 253B.08, subd. 1.

3. The legislature also provided that "the court may extend the time of hearing on the demand for an additional ten days" if "good cause" is shown. Minn.Stat. § 253B.08, subd. 1.

ing as soon as possible because the examinations were complete. His attorney stated that she was ready and available for such a hearing. The district court denied Giem's motion, stating that "[a]ny delays if they can be characterized as such with regard to bringing this case on for trial has [sic] been the result of the acquiescence of [Giem]" and "I believe that [Giem] does have a right to a trial in a timely manner, but he has waived his right by his acquiescence * * *." The court further noted that as a practical matter the attorneys and judge could not be made available for the hearing within 5 to 15 days. On March 6, the court issued a written order "[b]y agreement of the Court and counsel" continuing the merits hearing to May 8–12, 2006.

On March 22, Giem filed an appeal with the Minnesota Court of Appeals from the order denying both his motion to dismiss and the demand for a merits hearing within 5 days. The court of appeals dismissed the appeal as taken from a nonappealable order and said, "The February 23 order is not appealable because it does not deny a motion to dismiss on the ground of lack of subject-matter jurisdiction."

Giem subsequently filed a motion to dismiss the petition for lack of subject matter jurisdiction. The district court heard this motion on May 1, but at that time Giem's attorney asked the court to continue the motion to dismiss and postpone the hearing in order to implement a less restrictive alternative than commitment and to find Giem a place to live and a treating psychologist. The court questioned Giem to ensure that he understood his attorney's request and that he agreed to it. Giem confirmed his understanding and agreement. The court then ordered a continuance until June 26.

At the June 26 court appearance, the district court considered Giem's argument that he was unable to formulate a less restrictive alternative because Ramsey County Human Services refused to appoint a case manager. Giem asked the district court to order Ramsey County to appoint a case manager to his case, continue the case to permit the preparation of the alternative plan, or dismiss for lack of subject matter jurisdiction. The court denied Giem's motion to dismiss, but ruled that to the extent that Giem's motion could be construed as a demand for an immediate hearing pursuant to section 253B.08, subdivision 1, it was granted and the court ordered the merits hearing to commence on July 5.

The merits hearing on the petition to civilly commit Giem as an SPP and/or SDP was held July 5–7, 2006. The district court committed Giem as an SDP on August 18, 2006. Giem appealed to the court of appeals, arguing that the district court lacked subject matter jurisdiction over the civil commitment petition because it failed to comply with the deadlines in section 253B.08, subdivision 1. The court of appeals ruled that the deadlines "do not define or limit" the district court's subject matter jurisdiction. *In re Civil Commitment of Giem,* 727 N.W.2d 198, 203 (Minn. App.2007). Rather, the court held the deadlines to be statutory rights that were subject to waiver and that Giem had waived them. *Id.* at 203–04, 205. We granted Giem's petition for review.

## I.

Giem argues that the district court lost subject matter jurisdiction to hear the petition to commit him as an SPP and/or SDP when it failed to provide him a hearing on the merits of the commitment petition pursuant to the deadlines set forth in section 253B.08, subdivision 1. Subject matter jurisdiction is a question of law that

we review de novo. *Johnson v. Murray,* 648 N.W.2d 664, 670 (Minn.2002).

We turn first to an examination of the statute that Giem contends divested the district court of subject matter jurisdiction. There are two different timing provisions in section 253B.08, subdivision 1, and both appear to apply to the county's petition. First, the district court "shall" hold a hearing within 90 days from the date of filing—or up to an additional 30 days for good cause shown—on a commitment petition for an SPP and/or SDP. Minn.Stat. § 253B.08, subd. 1. The statute further provides that "[t]he proceeding shall be dismissed if the proposed patient has not had a hearing on a commitment petition within the allowed time." *Id.* Second, the proposed patient "may demand in writing at any time that the hearing be held immediately." *Id.* The hearing must be held within 5 days of the date of the demand—or 10 additional days for good cause shown—otherwise "the petition shall be automatically discharged if the patient is being held in a treatment facility pursuant to court order." *Id.* Neither deadline was satisfied in this case.

We turn next to an examination of the consequence of the district court's failure to meet the statutory deadlines. The parties do not dispute that the court had subject matter jurisdiction over the petition when the county filed it on October 19, 2005. But because the statutory deadlines were not met, Giem argues the court lost the authority to conduct any further proceedings on the petition.[4] *See Robinette v. Price,* 214 Minn. 521, 526, 8 N.W.2d 800, 804 (1943) (noting that subject matter jurisdiction refers to a court's authority to hear and decide an issue in controversy).

Giem argues that the timing provisions in section 253B.08, subdivision 1 are mandatory and not merely directory. He contends, in essence, that the legislative requirements that the petition "shall be dismissed" in the first part of the statute and the phrase "shall be automatically discharged" in the second part of the statute mean that the timing provisions are mandatory. In other words, because the legislature has provided for consequences if the deadlines are not met, the deadlines are mandatory and therefore necessarily jurisdictional.[5]

4. As noted by the court of appeals, Giem's appeal from the district court's commitment order challenges only the denial of his February 23 demand for immediate trial or dismissal. *Giem,* 727 N.W.2d at 204. Minnesota Rule of Civil Appellate Procedure 103.04 provides: "On appeal from or review of an order the appellate courts may review any order affecting the order from which the appeal is taken and on appeal from a judgment may review any order involving the merits or affecting the judgment." The February 23 order denying Giem's motion to dismiss affects the commitment order because it kept the proceedings on the petition active. Thus, the February 23 order is properly before us.

5. This case does not involve a situation where "the legislature, in creating a substantive right by statute, may, as an element of that substantive right, circumscribe the adjudication of that right more strictly than in other cases." *In re O'Rourke,* 300 Minn. 158, 175 n. 11, 220 N.W.2d 811, 821 n. 11 (1974); *see also Carlson v. Indep. Sch. Dist. No. 623,* 392 N.W.2d 216, 219, 221, 223–24 (Minn.1986) (holding that the requirement in the pre–1981 version of the Minnesota Human Rights Act that victims of discrimination file a charge of discrimination with the Department of Human Rights within 6 months of the claimed illegal act was jurisdictional and not subject to tolling). The legislature in section 253B.08, subdivision 1, is not circumscribing the right of a party to secure relief such as when it enacts a statute of limitations or imposes exhaustion requirements. Rather, if Giem's construction is adopted, the legislature is purporting to restrict the authority of the district court to act on a matter that properly fell within its subject matter jurisdiction in the first instance.

■ But there is a fundamental difference between finding that a deadline is mandatory and concluding that it operates to take away the district court's authority to act. We recently discussed the difference between deadlines as procedural tools and deadlines operating as jurisdictional limits. *Rubey v. Vannett*, 714 N.W.2d 417 (Minn.2006). As we noted there, one aspect of the difference is that defects in subject matter jurisdiction cannot be waived by the parties. *Id.* at 422. We attempted in *Rubey* to lend more clarity to the analysis of this important distinction. In that case, we held that a provision in our rules of civil procedure requiring that motions for a new trial be heard within 60 days did not restrict the district court's subject matter jurisdiction. *Id.* Rather, we held that the provision was "a procedural tool." *Id.*[6]

Because of our lack of clarity in distinguishing procedural tools from jurisdictional limits, Giem's argument finds some support in our case law. For example, Giem analogizes the consequential "automatically discharged" language in section 253B.08, subdivision 1, to a similar phrase in Minn.Stat. § 278.03 (2006), which this court characterized as "jurisdictional" in *Land O' Lakes Dairy Co. v. Douglas County, Hintzen*, 225 Minn. 538, 539, 31 N.W.2d 474, 476 (1948). In that case, we construed section 278.03, which requires that a taxpayer protesting his property tax

assessment pay half of the tax levied against the property at issue before filing a petition, then half of the remainder the following year. *Id.* at 537, 31 N.W.2d at 475. Failure to pay taxes when due "shall operate *automatically to dismiss* the petition and all proceedings thereunder unless such payment is waived by an order of the court." *Id.*, 31 N.W.2d at 475 (citing Minn. Stat. § 278.03) (emphasis added). We held that the district court's jurisdiction "terminated" "automatically" by operation of statute when the taxpayer failed to pay the second installment. *Id.* at 538, 31 N.W.2d at 476.

But we clarified the reach of *Land O' Lakes* in *In re Thunderbird Motel Corp. v. County of Hennepin*, 289 Minn. 239, 241, 183 N.W.2d 569, 571 (1971). There, the taxpayer's petition was automatically dismissed by operation of the statute because the taxpayer did not pay the second tax installment when due. *Id.* at 239, 183 N.W.2d at 570. The taxpayer brought a motion to vacate the dismissal. We noted that "[t]he failure to pay the second installment when due was occasioned by a misunderstanding between the taxpayer and its mortgagee" as to who was supposed to pay the taxes. *Id.* at 240, 183 N.W.2d at 570. Moreover, the taxpayer cited the fact that immediately upon becoming aware of the error, it paid the taxes with the requisite penalty. *Id.*, 183 N.W.2d at 570.

6. Our analysis in *Rubey* was consistent with the United States Supreme Court's warning against misuse of the term "jurisdictional." The Court has noted that " '[c]lassifying time prescriptions, even rigid ones, under the heading "subject matter jurisdiction" can be confounding. * * * [T]he label "jurisdictional" [should be used] * * * only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority.' " *Scarborough v. Principi*, 541 U.S. 401, 413–14, 124 S.Ct. 1856, 158 L.Ed.2d 674 (2004) (quoting *Kontrick v. Ryan*, 540 U.S. 443, 454–55, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004)). The Court distinguishes between non-jurisdictional procedural rules designed for the orderly transaction of business and jurisdictional time limits set forth by Congress in statute. *Bowles v. Russell*, —— U.S. ——, 127 S.Ct. 2360, 2364–65, 168 L.Ed.2d 96 (2007); *Eberhart v. United States*, 546 U.S. 12, 16, 126 S.Ct. 403, 163 L.Ed.2d 14 (2005) (discussing distinction between jurisdictional rules and "claim-processing" rules).

We distinguished *Land O' Lakes* because in that case the taxpayer neither paid the taxes nor intended to do so. *Thunderbird*, 289 Minn. at 241, 183 N.W.2d at 571. This distinction was "significant" because the statute permitted the payment requirement to be waived upon timely application and did not specify whether the dismissal sanction was with or without prejudice to obtaining further relief. *Id.*, 183 N.W.2d at 571. We noted that the legislature has the "power to impose strict limitations on the right to review tax assessments," but that "once the proceedings are initiated and the court has jurisdiction, in the absence of a clear intention to the contrary, * * * ordinary rules of civil procedure apply unless clearly inconsistent with the statute." *Id.* at 241–42, 183 N.W.2d at 571; *see also Husby–Thompson Co. v. County of Freeborn*, 435 N.W.2d 814, 815 (Minn.1989) (reversing the tax court's refusal to reinstate petition and noting that "by providing for a waiver" in the statute, the legislature "has recognized there may be situations where relief from a dismissal is appropriate."). As clarified by *Thunderbird* and *Husby–Thompson*, *Land O' Lakes* is properly read as addressing a situation where the legislature has created a substantive right (the ability to challenge decisions made by taxing authorities), and imposed a limitation (the requirement that taxes be timely paid) as a condition on the invocation of that right. *Land O' Lakes* should not be read to address the situation presented in this case, which involves the legislature's ability to take away the court's power to act on a matter properly before the court.

■ We agree with Giem that the provisions of section 253B.08, subdivision 1 are "mandatory" as we have defined that term in the context of statutory interpretation.[7] *See Hans Hagen Homes, Inc. v. City of Minnetrista*, 728 N.W.2d 536, 542 (Minn.2007) (noting that a statutory timing provision that included a consequence for noncompliance was mandatory); *Wenger v. Wenger*, 200 Minn. 436, 440, 274 N.W. 517, 519 (1937) (noting that when determining whether a statute is mandatory, this court looks to whether the act provided for is merely incidental or subsidiary to some chief purpose of the law, whether it is designed for protection of third persons, and whether the statute declares consequences for a failure to comply). But we clarify that our cases that discuss the mandatory/directory distinction in the context of questions of statutory interpretation do not provide an answer to the question of whether those statutory provisions, even if written in mandatory language, operate to divest the district court of subject matter jurisdiction when such statutory provisions are not satisfied.[8]

---

7. A patient's remedy for the district court's failure to follow the time procedures is a writ of mandamus. *See Hans Hagen Homes, Inc. v. City of Minnetrista*, 728 N.W.2d 536, 541 (Minn.2007) ("When a statute requires a governmental body to perform some act, it is reasonable to assume the governmental body will do so or it could be compelled to do so by mandamus.").

8. While not cited by the parties, *Heller v. Wolner*, 269 N.W.2d 31 (Minn.1978), could also be read as supporting Giem's argument. In *Heller*, this court considered whether the district court lost jurisdiction over proceedings to revoke a motorist's driver's license because the court failed to hold a hearing or grant a continuance within the statutorily prescribed 30–day period. *Id.* at 32. We held that the court did not lose jurisdiction because the statutory period "is directory and not a limitation on the court's jurisdiction." *Id.* And we commented that the statute did not specify any consequences for failure to hold the hearing within the 30–day period, which "reinforce[d] the directory nature of the statute[ ] * * *." *Id.; see also Wenger*, 200 Minn. at 437–38, 274 N.W. at 518, 519 (statute held to be directory because it did not provide consequences for the district court's

Those cases do not answer the question here, because Giem's construction of the statute—as one divesting the district court of subject matter jurisdiction it originally had—implicates constitutional separation of powers principles. Our state constitution provides a broad grant of subject matter jurisdiction to the district court, providing that "[t]he district court has original jurisdiction in all civil and criminal cases." Minn. Const. art. VI, § 3; *see State ex rel. Koalska v. Swenson,* 241 Minn. 278, 282, 62 N.W.2d 842, 844 (1954). The Minnesota district court thus is a constitutional court of original jurisdiction. Over 100 years ago we recognized that the district court is "the one court of general jurisdiction" and that "when it has once tried a case according to law, it does not, like certain courts of limited jurisdiction, lose its power to render judgment by mere delay beyond a specified time." *Vogle v. Grace,* 5 Minn. 294, 295, 5 Gil. 232, 233 (1861). Giem's construction of the timing provisions in section 253B.08, subdivision 1, as mandatory and thereby operating to divest the court of jurisdiction conflicts with what we said in *Vogle.*

■ In addition, such a construction would permit the legislature to interfere with the power the constitution vests in the district court. *Cf. State v. Harris,* 667 N.W.2d 911, 918 (Minn.2003) ("Granting judicial officers the power to hear and try *all* civil and criminal cases may improperly infringe on the district court's original jurisdiction. The legislature's delegation of an area of the district court's original jurisdiction calls for this court's close scrutiny." (internal quotation omitted)). We have long recognized that where the con-

stitution commits a matter to one branch of government, the constitution prohibits the other branches from invading that sphere or interfering with the coordinate branch's exercise of its authority. *See Bloom v. Am. Exp. Co.,* 222 Minn. 249, 256, 23 N.W.2d 570, 575 (1946) ("A constitutional grant of power to one of the three departments of government * * * is a denial to the others." (internal quotation omitted)); *State ex rel. Decker v. Montague,* 195 Minn. 278, 288, 262 N.W. 684, 689 (1935) ("The constitutional separation of authority (Minn. Const. art. 3, § 1) forbids * * * interference with the exercise of the powers which that instrument places" in the other branches of government).

We have held that if we can construe a statute to avoid a constitutional confrontation, we are to do so. *Kline v. Berg Drywall, Inc.,* 685 N.W.2d 12, 23 (Minn. 2004). We recognized in *Kline* that statutes are presumed constitutional and that "we are required to place a construction on the statute that will find it so if at all possible." *Id.* We construed the statute at issue in that case in a way that avoided a potential separation of powers problem. *Id.* ("It seems highly doubtful that the legislature intended the limitation of review of an arbitrator's decision to the WCCA, particularly when such a limitation necessarily implicates due process and separation of powers concerns."). We adopt a similar construction of section 253B.08, subdivision 1, and construe the statutory deadlines as not operating to limit the subject matter jurisdiction of the district court.

failure to issue an order within the 5–month time limit after the matter was submitted to the court). That the presence of consequences informs the determination of whether a statute is mandatory or directory, however,

does not address whether the statute operates to divest the court of subject matter jurisdiction. *Heller* therefore does not answer the question presented in this case.

Such a construction is consistent with our mandate to construe statutes, if possible, to avoid constitutional infirmities. Such a construction is also warranted here because the legislature gave no clear indication in section 253B.08, subdivision 1 that it intended to divest the district court of subject matter jurisdiction if the hearing was not held in compliance with the statute's deadlines. The legislature did not even mention jurisdiction in section 253B.08. *See Thunderbird,* 289 Minn. at 241–42, 183 N.W.2d at 571 (noting that "once the proceedings are initiated and the court has jurisdiction, *in the absence of a clear intention to the contrary,* * * * ordinary rules of civil procedure apply unless clearly inconsistent with the statute." (emphasis added)); *see also In the Interest of MFB,* 860 P.2d 1140, 1149 (Wyo.1993) (holding that failure to set an adjudicatory hearing within 60 days of the denial of allegations contained in a petition invoking juvenile court jurisdiction did not result in a loss of that court's subject matter jurisdiction and holding that "it would require an unequivocal expression from the legislature for a violation of the statute's language to result in a lack of subject matter jurisdiction."). In the absence of a clear legislative statement that the deadlines operate to divest the court of jurisdiction, which would require us to squarely confront and decide the separation of powers issue, we hold that the deadlines in section 253B.08, subdivision 1, while written in mandatory language, do not divest the district court of subject matter jurisdiction.

The statute thus requires a disposition but it does not deprive the court of power to act, which means that the district court did not lose subject matter jurisdiction when the statutory deadlines passed prior to the merits hearing being held.[9]

## II.

We next consider whether the district court and the court of appeals correctly held that Giem waived his right to have the merits hearing held within the deadlines set by section 253B.08, subdivision 1. The county contends that Giem impliedly waived his right to demand a hearing through acquiescence and conduct that delayed the petition proceedings. Giem argues that his February 23 demand entitled him by law to an immediate hearing, regardless of conduct prior to that demand.

## A.

■ In addressing the waiver question, we must first determine whether waiver principles are applicable in the context of section 253B.08, subdivision 1. The district court did not clearly articulate its basis for concluding that the deadlines in the statute could be waived. The court of appeals has held that the deadlines can be waived by conduct of the patient. *See In re May,* 477 N.W.2d 913, 915 (Minn.App.1991) (finding that appellant's failure to attend commitment hearings, which were scheduled within the deadline, resulted in a waiver because "[i]t would be an unreasonable result to permit a proposed patient to

---

9. Other states have recognized that once the district court obtains subject matter jurisdiction, "a later failure to follow statutory requirements does not divest the court of subject matter jurisdiction. Such a failure to follow the statute would amount to an erroneous decision not affecting jurisdiction." *People in Interest of Clinton,* 762 P.2d 1381, 1387 (Colo.1988) (citing *Prinster v. Dist. Court,* 137 Colo. 393, 325 P.2d 938, 942 (1958) (holding

that where personal and subject matter jurisdictional requirements are satisfied, the trial court "ha[s] power to make an erroneous order, as well as a correct one.") (citation omitted)); *see also In re Matthews,* 345 S.C. 638, 645, 550 S.E.2d 311 (2001) (holding that the State's failure to comply with a mandatory 60–day time period for a civil commitment trial did not deprive the court of subject matter jurisdiction to hear the case).

avoid commitment simply by not appearing in court."); *see also In re Irwin,* 529 N.W.2d 366, 371 (Minn.App.1995) (noting that "[a] patient may waive [the] requirements" of section 253B.08), *rev. denied* (Minn. May 16, 1995); *In re Buckhalton,* 503 N.W.2d 148, 151 (Minn.App.1993) (finding waiver of the section 253B.08, subdivision 1 deadlines), *aff'd* 518 N.W.2d 531 (Minn.1994).

▆▆▆ The county argues that the deadlines prescribed in section 253B.08, subdivision 1 are waivable. Those deadlines are similar to the right to a speedy trial, which can be waived. In a criminal case, the "right to a speedy trial is intended to avoid oppression and prevent delay by imposing upon the courts an obligation to proceed with reasonable dispatch." *State v. Dehler,* 257 Minn. 549, 556, 102 N.W.2d 696, 702 (1960). It is a personal, constitutional right that can be waived. *Id.* at 557, 102 N.W.2d at 703 (citing *State v. McTague,* 173 Minn. 153, 154, 216 N.W. 787, 788 (1927)). Similarly, the deadlines provided in section 253B.08, subdivision 1 seek to protect liberty interests by preventing delay. *See Vitek v. Jones,* 445 U.S. 480, 491–92, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) ("We have recognized that for the ordinary citizen, commitment to a mental hospital produces a massive curtailment of liberty and in consequence requires due process protection." (internal quotations omitted)). If constitutionally based rights to a speedy trial can be waived, a patient's conduct could likewise be construed as a waiver of the expedited statutory schedule for civil commitment proceedings.

Our jurisprudence reflects that we examine the nature of the right at issue in determining application of waiver principles. For example in *State v. Humes,* 581 N.W.2d 317 (Minn.1998), we examined whether the district court had the authority to resentence a defendant under Minn. R.Crim. P. 27.03, subd. 9, where it had failed to include a conditional release term in the original sentence. The defendant argued that the court had no such authority and that the statutory requirement for the imposition of a conditional release term could be waived because the statute did not expressly prohibit waiver of its requirements. *Id.* at 319. We "reject[ed] the argument that the legislature must append language prohibiting waiver to every mandatory statute to ensure that the statute is given effect." *Id.* Rather than applying a blanket rule on waiver, we proceeded to examine the nature of the right at issue. Finding that the statute at issue did "not serve to protect any right of the defendant," we concluded that the defendant could not rely on waiver principles. *Id.* at 320. In this case, by contrast, the right to a speedy disposition of the petition operates to protect important liberty interests of a confined patient, just as the right to a speedy trial operates for confined defendants in criminal cases. Just as confined defendants can waive the right to a speedy trial, we hold that confined patients can waive the deadlines in section 253B.08, subdivision 1.[10]

### B.

▆▆▆ Having concluded that waiver principles apply, we turn next to a review of the district court's conclusion that Giem waived, by his conduct, both the right to have a merits hearing within 90/120 days

---

**10.** Moreover, construing the statute to preclude application of waiver principles would implicate the same separation of powers principles discussed earlier. *See State v. Lemmer,* 736 N.W.2d 650, 657 (Minn.2007) ("The judicial branch governs procedural matters * * *."). To avoid these concerns, we construe the statute as permitting application of waiver principles.

of the October 19, 2005, petition filing and the right to have a hearing within 5/15 days of his February 23, 2006, demand. We review the district court's decision that Giem waived his rights for clear error. *See In re Welfare of G.L.H.*, 614 N.W.2d 718, 723 (Minn.2000) (applying clearly erroneous standard of review to district court's finding of waiver).

We have defined waiver as the "intentional relinquishment of a known right," *Carlson v. Doran*, 252 Minn. 449, 456, 90 N.W.2d 323, 328 (1958), or "an estoppel from enforcing it." *State v. Tupa*, 194 Minn. 488, 495, 260 N.W. 875, 878 (1935). Waiver is consensual in nature. *Carlson*, 252 Minn. at 456, 90 N.W.2d at 328. It arises from voluntary choice, not mere negligence. *Tupa*, 194 Minn. at 495, 260 N.W. at 878. Intent and knowledge are essential elements of a finding of waiver. *Carlson*, 252 Minn. at 456, 90 N.W.2d at 328.

Giem argues that the statutory deadlines cannot be waived constructively, and that any waiver must be written or expressed on the record. But outside the context of waivers of the right to counsel and to a trial by jury, which our rules require be made in writing, we have found waivers to be inferred from conduct and acquiescence. *See State v. Martin*, 723 N.W.2d 613, 620 n. 7, 621 (Minn.2006) (discussing cases where rights have been found to be waived by defendant's conduct); *Engstrom v. Farmers & Bankers Life Ins. Co.*, 230 Minn. 308, 312, 41 N.W.2d 422, 424 (1950) (noting that intention to waive rights "need not be proved by express declaration or agreement, but may be inferred from acts and conduct").

We adopt the same rule in this case and hold that a confined patient's waiver of the statutory deadlines in section 253B.08, subdivision 1 can be inferred from the conduct of the patient.

The lower courts found that Giem waived both of the deadlines in the statute. The record reflects that at the October 26, 2005, appearance Giem expressly waived his right to a preliminary hearing and agreed that a date for the merits hearing should not be set until after completion of the examinations.[11] These facts support a finding that Giem constructively waived his right to a hearing within the 90/120–day deadline. The district court, county attorney, and examiners detrimentally relied on Giem's October 26 waiver by not scheduling a date for the merits hearing. Giem had knowledge and intent to postpone the merits hearing until after his psychological evaluation in order to obtain "insight into where he's at right now." The February 23 finding that the delay in scheduling the merits hearing arose from Giem's acquiescence was therefore not clearly erroneous. That finding is further supported by Giem's requests for continuance on May 1 and June 26 in order to pursue the less restrictive alternative—requests which were inconsistent with his motion to dismiss.

That Giem waived his right to have the hearing held within the 90/120–day deadline, however, does not answer the question of whether he also waived his right to demand an immediate merits hearing under the other provision in the statute. Section 253B.08, subdivision 1, as set forth above, contains two different rights of which Giem could avail himself. *See* Minn. Stat. § 645.17(2) (2006) (delineating the

---

11. Because the court initially did not set a date for the merits hearing, the court-appointed examiners were not alerted about an immediate deadline to tender their reports. *See* Minn.Stat. § 253B.07, subd. 5 (2006) (explaining that examination reports are due 48 hours before a commitment hearing). Indeed, only the county's examiner had submitted his report when Giem brought his motion to dismiss in February 2006.

presumption that "the legislature intends the entire statute to be effective and certain").[12] With respect to the second right in the statute, the record does not support a finding that Giem waived his right to demand an immediate hearing within the 5/15–day period. To the contrary, when Giem made his demand on February 23, his attorney represented to the district court that they were ready and available for an immediate hearing. The record also does not support a finding that Giem had knowledge of or intent to waive the right to demand an immediate hearing. We hold therefore that the district court's finding that Giem waived his right to demand an immediate hearing was clearly erroneous.

### III.

■ Our conclusion that the district court's finding that Giem waived his right to demand an immediate hearing was clearly erroneous requires that we discuss the appropriate remedy. Giem had the right to "demand in writing *at any time* that the hearing be held immediately." Minn.Stat. § 253B.08, subd. 1 (emphasis added). Regardless of the scheduling impracticalities for the court, county attorney, and examiners, the district court was required to hold the hearing within 5 days (or within an additional 10 days if good cause were shown) of Giem's February 23 demand. Because the district court failed to conduct the hearing within 5 days of the demand and because the record does not support a finding that Giem waived this right, the petition should have been "discharged." Minn.Stat. § 253B.08, subd. 1. Therefore, we hold that the order for commitment issued in August 2006 must be vacated, and that Giem must be released from confinement.

Giem argues that the discharge means that the county is precluded from filing a petition involving any actions that were at issue in the petition the county filed on October 19, 2005. We reject this argument and hold that the discharge is without prejudice and does not operate to bar the county from filing the petition anew. We agree with the court of appeals that "the time constraints provided in subdivision 1 relate to the 'core of the liberty protected by the Due Process Clause.'" *Giem,* 727 N.W.2d at 202 (quoting *Kansas v. Hendricks,* 521 U.S. 346, 356, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997)). Those concerns are addressed through Giem's release from commitment pending the county's decision to file another petition.

The government's interest, however, must also be considered. We have previously recognized that the government has a compelling interest in the "protection of members of the public from persons who have an uncontrollable impulse to sexually assault." *In re Blodgett,* 510 N.W.2d 910, 914 (Minn.1994). That interest is served by allowing the county, if it chooses, to renew its petition, and to rely on any conduct that Giem engaged in prior to the filing of its renewed petition. We recognize that this result may lead to a hearing on the merits of the county's petition that is replicative of the hearing the district court conducted in July 2006. But this is the result mandated by application of the clear language the legislature used in section 253B.08, subdivision 1.

Affirmed in part and reversed in part.

---

12. The district court suggested that the legislature did not intend the second provision—the right to demand an immediate hearing—to apply to patients whom the government seeks to commit as an SPP and/or SDP. The legislature expressed no such exception in the language of the statute, and we are without authority to create one.