**In the Matter of the WELFARE OF R.D.M., III, Child.**

No. A12–1232.

Court of Appeals of Minnesota.

Jan. 28, 2013.

David W. Merchant, Chief Appellate Public Defender, Benjamin J. Butler, Assistant Public Defender, St. Paul, MN, for appellant.

Lori Swanson, Attorney General, St. Paul, MN; and Michael D. Williams, Marshall County Attorney, A.J. Kasprick, Assistant County Attorney, Warren, MN, for respondent.

Considered and decided by LARKIN, Presiding Judge; KALITOWSKI, Judge; and CRIPPEN, Judge.*

## OPINION

LARKIN, Judge.

Appellant challenges the juvenile court's order certifying the underlying delinquency proceeding for action under the laws and court procedures controlling adult criminal violations.[1] He argues that the

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.
1. As used in this opinion, "juvenile court" refers to a district court judge acting as a juvenile court judge. *See Vang v. State,* 788

juvenile court lost subject-matter jurisdiction when it failed to hold a hearing on the state's certification motion within the deadlines prescribed by Minn.Stat. § 260B.125, subd. 2(4). He also argues that the juvenile court abused its discretion by certifying the proceeding. Because appellant did not challenge the timeliness of the certification hearing in juvenile court, we do not address the merits of that argument. And because the court did not abuse its discretion in certifying the proceeding, we affirm.

## FACTS

Appellant R.D.M. III (born December 26, 1993) confessed to breaking into a pharmacy in 2010 and stealing numerous controlled substances, including morphine, hydrocodone, and oxycodone. The state filed a delinquency petition charging R.D.M. with second-degree burglary, first-degree criminal damage to property, and theft of a controlled substance.

On December 6, the state moved to certify the proceedings for prosecution in district court. The juvenile court held an arraignment hearing on December 13, but R.D.M. failed to appear. R.D.M. also failed to appear at the rescheduled hearing on January 3, 2012, and the juvenile court issued a warrant for his arrest. R.D.M. appeared before the juvenile court for a detention hearing on February 9. The court set conditions for R.D.M.'s release and scheduled another hearing for February 14.

On February 14, R.D.M. informed the court that he wanted to waive his right to a certification hearing and stipulate to his

N.W.2d 111, 118 (Minn.2010) (Dietzen, J., concurring) (explaining that "a district judge may sometimes act as a district court judge with original jurisdiction over all civil and criminal matters; and other times act as a juvenile court judge").

prosecution as an adult. The juvenile court refused to accept R.D.M.'s stipulation without first obtaining a certification study and ordered the study. The juvenile court scheduled a certification hearing for March 22. This hearing was postponed until April 19, at which time R.D.M. requested a continuance to "prepare an adequate defense." The juvenile court "reluctantly" granted the continuance and rescheduled the certification hearing for May 17.

The juvenile court held the certification hearing on May 17. The probation officer who prepared the certification study was the sole witness at the hearing. She testified that R.D.M. had six similar felony charges pending in Polk County, as well as charges pending in North Dakota involving the theft of more than 50,000 pills. She further testified that in 2006, R.D.M. was adjudicated delinquent for possession of drug paraphernalia, criminal trespass, criminal mischief, and minor consumption of alcohol. In 2008, he was adjudicated delinquent for two felony-level assaults.

The juvenile court certified the proceeding for action under the laws and court procedures controlling adult criminal violations, and this appeal follows.

## ISSUES

I. Did the juvenile court lose subject-matter jurisdiction when it failed to hold a hearing on a certification motion within the deadlines prescribed by Minn.Stat. § 260B.125, subd. 2(4)?

II. Did the juvenile court abuse its discretion by certifying the proceeding for action under the laws and court procedures controlling adult criminal violations?

**2.** The burglary occurred in 2010, and the juvenile court made its certification decision in 2011. The applicable statutes have not

## ANALYSIS

### I.

"When a child is alleged to have committed, after becoming 14 years of age, an offense that would be a felony if committed by an adult, the juvenile court may enter an order certifying the proceeding for action under the laws and court procedures controlling adult criminal violations." Minn.Stat. § 260B.125, subd. 1 (2012).[2] Section 260B.125 sets forth several conditions that must be satisfied before the district court may order certification, including that "a hearing has been held ... within 30 days of the filing of the certification motion, unless good cause is shown ... in which case the hearing shall be held within 90 days of the filing of the motion." *Id.*, subd. 2(4). The Minnesota Rules of Juvenile Delinquency Procedure also set forth a 90–day deadline for a certification hearing, but the relevant rule indicates that a child may waive "the right to the scheduling of the hearing within specified time limits." Minn. R. Juv. Delinq. P. 18.05, subd. 1(B); *see Vang v. State*, 788 N.W.2d 111, 115 (Minn.2010) (citing rule 18.05 and stating that "[a] child may waive the right to a certification hearing if the waiver is made knowingly, voluntarily, and intelligently after the child is fully and effectively informed of the right").

R.D.M. argues that "the juvenile court had no authority to order certification because it did not hold a certification hearing within 30 or 90 days of the filing of the certification motion," as required by statute. Although R.D.M. recognizes that the rules "seem to contemplate" that a child may waive the right to the scheduling of a certification hearing within the prescribed time limits, he argues that the rule "con-

changed. For ease of reference, we cite to the current statutes throughout this opinion.

tradicts the plain language of the statute" and the "statute, not the rule, controls in this situation." But R.D.M. did not challenge the timeliness of the certification hearing or the validity of the rule in juvenile court. In fact, R.D.M. did not object to any of the continuances, and he requested the final continuance.

■ Because R.D.M. did not raise the timing issue in juvenile court, this court is not inclined to address the issue for the first time on appeal. *See Roby v. State,* 547 N.W.2d 354, 357 (Minn.1996) (stating that as a general rule, appellate courts will not decide issues that were not first raised in the district court). However, a subject-matter-jurisdiction challenge can be raised at any time. *See Cochrane v. Tudor Oaks Condo. Project,* 529 N.W.2d 429, 432 (Minn.App.1995) ("Because subject matter jurisdiction goes to the authority of the court to hear a particular class of actions, lack of subject matter jurisdiction may be raised at any time, including for the first time on appeal."), *review denied* (Minn. May 31, 1995). And R.D.M. contends that timing of the certification hearing raises an issue of subject-matter jurisdiction, arguing that "the juvenile court had no subject-matter jurisdiction over the certification request once 90 days had lapsed." R.D.M. quotes *Vang v. State,* in which the Minnesota Supreme Court stated, "When a court does not have the authority to hear and determine a particular class of actions and the particular questions that the court assumes to decide, the court lacks subject-matter jurisdiction." 788 N.W.2d at 117.

R.D.M.'s reliance on *Vang* is misplaced. In *Vang,* a juvenile was charged by delinquency petition with first-degree murder, second-degree murder, and attempted first-degree murder, and a grand jury subsequently indicted him on all three charges. *Id.* at 113. The state filed a motion to certify the proceeding. *Id.* At an

appearance in juvenile court, Vang indicated that "he was 'giving up' his certification hearing, [and] would be 'treated as an adult.'" *Id.* The same court accepted Vang's guilty pleas to first-degree murder and attempted first-degree murder, convicted Vang of the criminal offenses, and imposed concurrent adult criminal sentences of life imprisonment for the first-degree murder conviction and 200 months in prison for the attempted first-degree murder conviction. *Id.*

On appeal to the Minnesota Supreme Court, Vang claimed that his criminal convictions and sentences were void for lack of subject-matter jurisdiction. *Id.* at 115. The supreme court agreed, reasoning that under the Juvenile Court Act, "a juvenile court does not have the authority to impose adult [criminal] sentences" and that generally, "[n]o adjudication on the status of any child in the jurisdiction of the juvenile court shall be deemed a conviction of crime." *Id.* (citing Minn.Stat. § 260B.198 (2008) and Minn.Stat. § 260B.245, subd. 1(a) (2008)). The supreme court observed that although the juvenile court ordered that the proceedings were

> certified to adult court, the record [did] not contain any subsequent adult court order convicting and sentencing Vang as an adult. Nor [did] the ... order contain any language suggesting that the judge believed he was sitting as the adult court when he convicted and sentenced Vang as an adult. While there is little doubt that the parties expected that Vang would be convicted and sentenced as an adult, it is equally clear the parties expected that it would be the *juvenile court* that convicted and sentenced Vang as an adult.

*Id.* at 117.

The supreme court reiterated that "a juvenile court lacks the authority to convict or sentence a child as an adult, except

under circumstances that are not applicable in Vang's case." *Id.* (citing Minn.Stat. §§ 260B.198, .245, .255 (2008)). It is within this context that the supreme court stated, "[w]hen a court does not have the authority to hear and determine a particular class of actions and the particular questions that the court assumes to decide, the court lacks subject-matter jurisdiction" and that "[w]hen the court lacks subject-matter jurisdiction over a proceeding at the time it imposes a sentence, the sentence is void." *Id.* The supreme court concluded that "[b]ecause the judge was sitting as the juvenile court at the time he convicted and sentenced Vang as an adult, Vang's convictions and sentences [were] void for lack of subject-matter jurisdiction." *Id.* at 117–18. The supreme court therefore reversed and remanded. *Id.* at 118.

■ In sum, the criminal convictions and sentences in *Vang* were void for lack of subject-matter jurisdiction because the juvenile court was without *any* authority to criminally convict and sentence Vang as an adult for the charged offenses. *Vang* did not involve a situation in which the juvenile court was authorized to hear and determine the proceeding but failed to comply with the governing procedural requirements. The latter situation is at issue here: the legislature has granted the juvenile court authority to hear and determine a motion to certify a delinquency proceeding for action under the adult criminal laws under certain circumstances. *See* Minn.Stat. 260B.125, subd. 1. Although the legislature has imposed certain procedural requirements that govern the juvenile court's actions in this regard, such as the requirement that a certification hearing be held within 90 days, failure to comply with the requirements does not deprive the juvenile court of jurisdiction to hear and determine the motion. *See In re Civil*

*Commitment of Giem,* 742 N.W.2d 422, 430 (Minn.2007) (holding that the district court did not lose subject-matter jurisdiction when it failed to hold a hearing on the merits of a civil-commitment petition within statutory deadlines). Thus, the juvenile court's purported failure to comply with the statutory timing requirement in this case did not divest the court of jurisdiction to hear and determine the state's certification motion. *See id.* at 430 (explaining that "[t]he statute . . . does not deprive the court of power to act, which means that the district court did not lose subject matter jurisdiction when the statutory deadlines passed prior to the merits hearing being held"). The validity of the resulting certification order may be in question, but not for lack of subject-matter jurisdiction. *See id.* at 430 n. 9 (noting that "[o]ther states have recognized that once the district court obtains subject matter jurisdiction, a later failure to follow statutory requirements does not divest the court of subject matter jurisdiction" (quotation omitted)).

Because the statutory timing requirement is not jurisdictional, and because R.D.M. did not challenge the timeliness of the certification hearing or the validity of the waiver rule in juvenile court, we decline to address R.D.M.'s argument that the certification order is invalid for lack of a timely certification hearing.

## II.

A presumption in favor of certification exists when "the child was 16 or 17 years old at the time of the offense" and "the delinquency petition alleges that the child committed an offense that would result in a presumptive commitment to prison under the Sentencing Guidelines and applicable statutes, or that the child committed any felony offense while using, whether by brandishing, displaying, threatening with,

or otherwise employing, a firearm." Minn. Stat. § 260B.125, subd. 3 (2012). The presumption does not apply in this case. Thus, the juvenile court could order certification only if the state proved "by clear and convincing evidence that retaining the proceeding in the juvenile court does not serve public safety." *Id.*, subd. 2(6)(ii) (2012). R.D.M. argues that the state did not meet its burden.

 District courts are given considerable latitude in determining whether certification of juvenile proceedings for adult prosecution is appropriate, and this court will not reverse a decision to certify unless the district court's findings are clearly erroneous so as to constitute an abuse of that discretion. *In re Welfare of S.J.G.*, 547 N.W.2d 456, 459 (Minn.App.1996), *review denied* (Minn. Aug. 6, 1996). On appeal from a certification order, this court presumes that the factual allegations in the delinquency petition and the charges against the juvenile are true. *In re Welfare of U.S.*, 612 N.W.2d 192, 195 (Minn. App.2000).

In determining whether public safety is served, courts must consider

(1) the seriousness of the alleged offense in terms of community protection, including the existence of any aggravating factors recognized by the Sentencing Guidelines, the use of a firearm, and the impact on any victim;

(2) the culpability of the child in committing the alleged offense, including the level of the child's participation in planning and carrying out the offense and the existence of any mitigating factors recognized by the Sentencing Guidelines;

(3) the child's prior record of delinquency;

(4) the child's programming history, including the child's past willingness to participate meaningfully in available programming;

(5) the adequacy of the punishment or programming available in the juvenile justice system; and

(6) the dispositional options available for the child.

In considering these factors, the court shall give greater weight to the seriousness of the alleged offense and the child's prior record of delinquency than to the other factors listed in this subdivision.

Minn.Stat. § 260B.125, subd. 4 (2012).

"These factors, which address the nature of the offense and the circumstances of the child, are intended to assess whether a juvenile presents a risk to public safety and thus aim to predict whether a juvenile is likely to offend in the future." *In re Welfare of H.S.H.*, 609 N.W.2d 259, 262 (Minn.App.2000). "Although some of the factors examine the juvenile's past behavior and programming failures, others must be read to allow consideration of the juvenile's current conduct." *Id.* "In the end, the factors must show that a risk to public safety exists because the juvenile's behaviors are likely to continue." *Id.* We review the district court's consideration of each of the factors in turn.

*The Seriousness of the Alleged Offense*

 The juvenile court determined that this factor supports certification because R.D.M. "committed three serious felonies." The court noted that "[t]he crimes resulted in the theft of more than 2,600 controlled substance pills, of the sort that are commonly abused," representing "a serious risk to those who are addicted to controlled substances as well as society as a whole." R.D.M. argues that because his crimes were "property crimes" and "[n]o person was injured during the burglary," the state did not prove that the seriousness of the offenses supported certifica-

tion. *See id.* ("Certification cases generally involve violent crimes against persons, such as murder or assault."). But the statutory authority for certification is not limited to violent crimes—it applies to any felony-level offense. *See* Minn.Stat. § 260B.125, subd. 1 ("When a child is alleged to have committed, after becoming 14 years of age, an offense that would be a felony if committed by an adult, the juvenile court may enter an order certifying the proceeding for action under the laws and court procedures controlling adult criminal violations."). Thus, as R.D.M. concedes, "a juvenile can be certified for a property offense."

Moreover, as compared to other property crimes, this one is serious. *See In re Welfare of T.R.C.*, 398 N.W.2d 662, 666 (Minn.App.1987) (affirming certification in a property crime and stating that "the court appropriately considered the offenses to be serious"). R.D.M. broke into a pharmacy, using a crowbar, and stole over 2,600 controlled-substance pills, including morphine, hydrocodone, and oxycodone. And as the district court correctly noted, the theft of these controlled substances had potentially far-reaching consequences, given that these drugs are commonly abused.

*The Culpability of the Child in Committing the Alleged Offense*

The juvenile court determined that this factor supports certification because R.D.M. "played an active role in the[ ] crimes. [He] himself shattered the front door of the pharmacy to gain access and his blood was found at the cabinet where the drugs were located." R.D.M. contends that "the State did not show that [he] was so culpable so as to meet its burden regarding this factor." R.D.M. argues that "[t]he State did not show whose idea the offenses were; who procured the crowbar; who drove the car to or from the pharma-

cy." We are not persuaded. R.D.M. admitted to shattering the glass door and stealing the pills. These actions are sufficient to demonstrate culpability. R.D.M. also argues that "[w]hatever culpability [he] showed via his actions on the day of the burglary was undercut by his actions, including taking full responsibility . . . subsequent to the burglary." But, contrary to his assertion, R.D.M.'s subsequent confession does not make him any less culpable for commission of the crime itself.

*The Child's Prior Record of Delinquency*

█ The juvenile court determined that this factor supports certification because R.D.M. "has a serious prior delinquency record, including two convictions for felony assault. Most notably, [R.D.M.] recently admitted to four felonies in Polk County for similar crimes . . . and has related charges pending in [North Dakota]. Given [this] record, it is clear that the crimes in this case could not be considered an isolated incident." R.D.M. argues that the juvenile court "erred by considering evidence that [he] 'has related charges pending in [North Dakota]' " because the "State did not show that those pending charges had, at the time of the hearing, resulted in delinquency adjudications." But the juvenile court is authorized to consider pending charges when analyzing this factor. *See In re Welfare of N.J.S.*, 753 N.W.2d 704, 710 (Minn.2008) ("We conclude that 'prior record of delinquency' unambiguously refers to records of petitions to juvenile court and the adjudication of alleged violations of the law by minors.").

R.D.M. also argues that his prior adjudications do not weigh in favor of certification because they do not "show deeply ingrained, escalating criminal behavior that presents a threat to public safety." *H.S.H.*, 609 N.W.2d at 263. We disagree. When R.D.M.'s prior adjudications—in-

cluding his adjudications for two felony-level assaults—are considered along with his pending charges, they clearly show escalating criminal behavior that presents a threat to public safety.

*The Child's Programming History*

The juvenile court concluded that this factor yielded "a mixed result" for R.D.M. The court reasoned that R.D.M. "has been in two different chemical dependency programs (one failed; one passed) plus Drug Court, which failed. [R.D.M.] has also been in two correctional placements, one of which [was unsuccessful] and one of which he completed. The failures occurred when [R.D.M.] either assaulted another person or used a controlled substance." R.D.M. contends that "[t]he juvenile court correctly recognized that the State did not meet its burden of proving that [his] programming history weighed in favor of certification." But this is only one of six factors to be considered, and it is not one of the most heavily weighted factors. *See* Minn.Stat. § 260B.125, subd. 4 (listing the factors to be considered and stating that "the court shall give greater weight to the seriousness of the alleged offense and the child's prior record of delinquency than to the other factors").

*The Adequacy of the Punishment or Programming Available in the Juvenile Justice System and the Dispositional Options Available for the Child* [3]

The juvenile court concluded that there was not "sufficient time to deal with [R.D.M.] in a juvenile court setting" because he was almost 19 years old. And the juvenile court "carefully considered whether [Extended Jurisdiction Juvenile (EJJ)] is an appropriate dispositional option" for R.D.M., ultimately concluding that

an EJJ status would not serve public safety in this case, for two primary reasons: (a) [R.D.M.] allegedly stole more than 2,600 pills, which the Court considers to be extremely serious (especially in light of the similar crimes [R.D.M.] committed around the same time); and (b) [R.D.M.] is already 18 1/2 years old, and would have a limited amount of time on an EJJ status. The Court simply does not believe that an EJJ status will give [R.D.M.] sufficient time for programming for his addictions and behaviors, especially when [R.D.M.] has been through chemical dependency treatment and juvenile correctional programming in the past, to no avail.

R.D.M. argues that "the State did not meet its burden of proving that an EJJ disposition would not protect public safety or that there were no programming options available for [him]." But the mere availability of juvenile programming does not necessarily favor maintaining juvenile jurisdiction. *See St. Louis Cnty. v. S.D.S.,* 610 N.W.2d 644, 650 (Minn.App.2000) ("[T]here is no dispute that there were disposition options for respondent, given that three different programs had interviewed and were willing to accept him. However, these options are outweighed by the seriousness of respondent's alleged offenses and his prior delinquency record, which must be given greater weight and which, when considered in light of the factors, favor certification."). Moreover, the certification statute emphasizes public safety rather than treatment options. *State v. Mitchell,* 577 N.W.2d 481, 489 (Minn.1998). The juvenile court properly considered EJJ, but ultimately concluded that this disposition would not support public safety for the reasons provided.

In sum, five of the six public-safety factors weigh in favor of certification, includ-

---

**3.** These two factors are frequently considered together. *See, e.g., In re Welfare of D.T.H.,* 572 N.W.2d 742, 745 (Minn.App.1997), *review denied* (Minn. Feb. 19, 1998).

ing the seriousness of the alleged offenses and the child's prior record of delinquency, which receive greater weight. *See* Minn. Stat. § 260B.125, subd. 4; *In re Welfare of P.C.T.*, 823 N.W.2d 676, 678 (Minn.App. 2012) ("The district court also abuses its discretion when it fails to afford sufficient weight to the seriousness of the offense and the juvenile's prior record of delinquency."). We therefore conclude that the juvenile court did not abuse its discretion in weighing the factors and concluding that the state met its burden of showing, by clear and convincing evidence, that retaining the proceeding in the juvenile court does not serve public safety.

### DECISION

The juvenile court did not lose subject-matter jurisdiction by failing to hold a certification hearing within 90 days of the state filing a certification motion. Because the statutory timing requirement is not jurisdictional and R.D.M. did not challenge the timeliness of the certification hearing or the validity of the waiver rule in juvenile court, we do not address R.D.M.'s argument that the certification order is invalid on procedural grounds. As to the merits, the juvenile court did not abuse its discretion by certifying the proceeding. We therefore affirm.

**Affirmed.**