

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

IN THE MATTER OF THE CARE AND )
TREATMENT OF LESTER BRADLEY )
a/k/a LESTER B. BRADLEY, a/k/a )
LESTER BERNARD BRADLEY, )
                                          )
                  **Appellant,** )    **WD76441**
                                          )
v.                                      )    **OPINION FILED:**
                                          )    **June 17, 2014**
                                          )
STATE OF MISSOURI, )
                                          )
                  **Respondent.** )

### Appeal from the Circuit Court of Jackson County, Missouri
### The Honorable Kathleen A. Forsyth, Judge

**Before Division One:** Joseph M. Ellis, Presiding Judge, and
Karen King Mitchell and Anthony Rex Gabbert, Judges

      Lester Bradley appeals the probate court's judgment, following a jury trial, finding him to be a sexually violent predator and committing him to the custody of the Department of Mental Health for control, care, and treatment. Bradley raises three claims on appeal: first, he argues that the evidence was insufficient to clearly and convincingly establish that he was more likely than not to reoffend sexually if not confined; second, he claims that the probate court erred in denying his motion to dismiss for failure to hold a probable cause hearing within the statutorily

required 72-hour period following his detention on the State's petition; and third, he claims that the probate court abused its discretion in excluding evidence regarding the multidisciplinary team's assessment. Because the court erred in determining that the assessment was inadmissible pursuant to section 632.483.5,[1] we reverse the probate court's judgment and remand for further proceedings.

## Factual Background

Beginning in October of 1996, Bradley began molesting his twelve-year-old step-daughter by fondling her vagina, forcing her to fondle his penis, forcing her to lie on top of him and rub herself against his penis, and performing oral sex on her. Bradley advised the victim that she was participating in classes on rape, and at the conclusion, she would receive "feely certificates." These "classes" lasted approximately two months, until Bradley advised the victim of the final lesson, which would involve insertion of his penis into her vagina, after which she would receive a "rape certificate." Bradley advised the victim that after her final lesson, Bradley would then begin lessons with the victim's eight-year-old sister. After Bradley advised the victim of his future plans, the victim reported Bradley's abuse to her mother sometime around Christmas of 1996. Bradley was subsequently charged with and convicted of one count of first-degree statutory sodomy and two counts of second-degree child molestation.

While in prison, Bradley completed the Missouri Sex Offender Program (MOSOP) in December 2007, and he was released on parole in March 2008. Conditions of Bradley's parole included: registration as a sex offender, participation in sex offender treatment, no unsupervised contact with children, and no viewing or possessing pornographic material. Within months of being paroled, Bradley began watching pornography and started a relationship with a woman

---

[1] All statutory references are to the Missouri Revised Statutes 2000, as updated through the 2013 Cumulative Supplement, unless otherwise indicated.

who had a ten-year-old daughter. Bradley would spend two or three nights per week at the woman's home, babysit the daughter without supervision for up to ten hours at a time while the mother worked, and drive the daughter to and from school approximately two days per week, all in violation of his parole conditions. Although he was in sex offender treatment at the time, which required him to self-identify and report risky behaviors, Bradley did not reveal his relationship or his contact with the ten-year-old girl. He did, however, report that, just before he was paroled, he began having sexual fantasies about his prior victim and masturbating to those fantasies. After his violations were discovered, Bradley's parole was revoked in October 2008 and he returned to the Department of Corrections to finish serving his sentence. When asked about his unauthorized contact with the ten-year-old girl, Bradley indicated: "I'm not attracted to her because she's fat."

Before Bradley's scheduled release date on June 9, 2011, Dr. Kimberly Weitl, a licensed psychologist with the Department of Corrections, filed an end-of-confinement report, indicating her belief that Bradley met the definition of a sexually violent predator (SVP) and referring the matter to the multidisciplinary team (MDT)[2] for further evaluation. The MDT reviewed Bradley's records and unanimously concluded that Bradley did *not* appear to meet the definition of a sexually violent predator. Thereafter, the prosecutors' review committee[3] met and, contrary to the MDT, unanimously concluded that Bradley *did* meet the definition of a sexually violent predator. The Attorney General, acting on behalf of the State, then filed a petition to civilly commit Bradley as a sexually violent predator.

---

[2] The MDT is established by the directors of the departments of both mental health and corrections, and it consists of no more than seven members, including at least one from each department. § 632.483.4. The MDT is to assess whether the person meets the definition of a sexually violent predator. *Id.* It appears from the record that the current MDT actually consists of four members: a psychiatrist from the department of corrections, a psychologist with a Ph.D. from the department of mental health, a medical doctor from the department of mental health, and a psychologist with a Ph.D. from the department of corrections.

[3] This committee consists of five prosecutors who are to review the person's records and determine whether he or she meets the definition of a sexually violent predator. § 632.483.5.

Within the petition, the State requested that the probate court find probable cause to believe that Bradley was a sexually violent predator and set a hearing within 72 hours of his detention on the petition in order to allow Bradley the opportunity to appear and contest the probable cause determination. On May 24, 2011, the probate court entered an order finding probable cause to believe that Bradley met the definition of a sexually violent predator under section 632.480(5) and ordering that Bradley be brought to Jackson County for a probable cause hearing on June 10, 2011 (the day after his scheduled release from the Department of Corrections).

On May 26, 2011, the State filed a motion to move the probable cause hearing due to unavailability of its expert witness on the scheduled hearing date. The State proposed three alternative dates: June 8, June 9, or June 13, 2011.[4] Also on May 26, 2011, Assistant Public Defender Randall Schlegel entered his appearance on Bradley's behalf and consented to either June 8 or June 9, but indicated his own conflict with June 13.

On June 3, 2011, the court held what appears to have been a status or scheduling conference, wherein both the State and Mr. Schlegel appeared, to discuss the State's motion. It appears that, at this hearing, the court indicated that it was not available on any of the proposed dates.[5] The State indicated that it was ready to present evidence in support of the petition. Mr. Schlegel, acting on Bradley's behalf, indicated that Bradley freely and voluntarily waived his right to have the probable cause hearing held within the 72-hour time period prescribed by section 632.489.2, but "request[ed] a continuance of this opportunity." The court found that Bradley freely and voluntarily waived the 72-hour time limitation for the probable cause hearing

---

[4] Bradley conceded that all three of the proposed dates in the State's motion fell within section 632.489.2's requirement that a probable cause hearing be held within 72 hours of the person being taken into custody on the petition.

[5] There is no transcript of this hearing in the record on appeal, but both Bradley's motion to dismiss and the State's response indicate that the court revealed its unavailability on the suggested dates during the hearing.

and that Bradley would not be prejudiced by a continuance of the hearing. The court then ordered that the probable cause hearing be continued until July 6, 2011, and that Bradley was to remain in the custody of the Jackson County Sheriff's Department until the proceedings were concluded. The court held the probable cause hearing on July 6, 2011, without objection, and found probable cause to believe that Bradley was a sexually violent predator.

Thereafter, pursuant to court order, Bradley was evaluated by Department of Mental Health psychologist, Dr. Stephen Jackson. Although Dr. Jackson believed that Bradley suffered from a mental abnormality (pedophilia) that caused him serious difficulty controlling his behavior, Dr. Jackson did not believe that Bradley was more likely than not to reoffend sexually if not confined; thus, he opined that Bradley was not a sexually violent predator.

The State retained Dr. Angeline Stanislaus, a psychiatrist, to review Bradley's records and determine whether he met the definition of a sexually violent predator. Dr. Stanislaus diagnosed Bradley with both pedophilia and anti-social personality disorder, both of which she deemed to constitute mental abnormalities that caused Bradley serious difficulty controlling his behavior. Dr. Stanislaus also opined, based upon her use of actuarial tools, that Bradley was more likely than not to reoffend sexually if not confined; thus, Dr. Stanislaus was of the opinion that Bradley met the definition of a sexually violent predator.

Bradley retained Dr. Jarrod Steffan, a psychologist, to conduct an evaluation. Dr. Steffan diagnosed Bradley with anti-social personality disorder, a mental abnormality that caused Bradley serious difficulty controlling his behavior. Unlike Drs. Jackson and Stanislaus, however, Dr. Steffan rejected the diagnosis of pedophilia based upon his perception of the victim's stage of puberty at the time of the crimes. Like Dr. Jackson, Dr. Steffan also rejected the notion that Bradley was more likely than not to reoffend sexually if not confined. Dr. Steffan

specifically took issue with the manner in which Dr. Stanislaus scored the actuarial instruments when assessing Bradley's future risk; he believed that Dr. Stanislaus improperly relied upon Bradley's parole violation, rather than his sexual convictions, to establish Bradley's index offense[6] for scoring purposes.

On January 4, 2013, twenty-four days before trial and eighteen months after the probable cause hearing, Bradley filed a motion to dismiss due to the court's failure to hold the probable cause hearing within 72 hours of Bradley being taken into custody on the petition. Bradley argued that he did not consent to the untimely hearing and that he was prejudiced in that, without its expert, the State would not have been able to establish probable cause, and Bradley would have been released. Bradley argued that the 72-hour time period was jurisdictional and that the court's failure to timely hold the probable cause hearing deprived the court of jurisdiction to proceed on the State's petition. The State filed a response, conceding that the hearing was held outside of the 72-hour window but arguing that Bradley waived his right to challenge the timing, given his consent to the court's setting of the hearing outside of the 72-hour window.

During Bradley's opening statement, he mentioned the MDT assessment, and the State objected on the ground that the MDT assessment was inadmissible under section 632.483.5. The court sustained the objection. During Dr. Jackson's testimony, Bradley sought to elicit testimony regarding the MDT assessment, and again the State objected, claiming that the assessment was inadmissible under the statute. Bradley argued that the statute excluded evidence pertaining to only the prosecutors' review committee and not the MDT assessment. The court reviewed the statute, agreed with the State, sustained the objection, and struck Dr. Jackson's testimony

---

[6] Bradley's experts suggested that the "index offense" for purposes of the actuarial instrument is the subject's "most recent sex offense," which is usually a conviction, but is not required to be; if the index offense is not a conviction, then it must be "something that[,] if the person was not in the prison setting or under supervision, it would be behavior they could be criminally charged with."

6

regarding the MDT assessment. At the close of evidence, Bradley argued that the court's ruling regarding the MDT assessment denied him his rights to due process and a fair trial under both the United States and Missouri Constitutions.

The jury found Bradley to be a sexually violent predator, and on January 20, 2013, the court ordered that he be committed to the Department of Mental Health for control, care, and treatment. Bradley appeals.

## Analysis

Bradley raises three claims on appeal. First, he claims that the evidence was insufficient to sustain the State's burden of clearly and convincingly proving that Bradley was a sexually violent predator in that the evidence did not support a finding that Bradley was more likely than not to reoffend sexually if not confined. Second, Bradley claims that the probate court erred in overruling his motion to dismiss for failure to hold his probable cause hearing within the 72-hour time period prescribed by statute. And finally, Bradley claims that the probate court erred in excluding evidence regarding the MDT assessment. For ease of discussion, we take Bradley's points out of order.

### A. The probate court did not err in overruling Bradley's motion to dismiss.

In his second point, Bradley argues that the probate court should have dismissed the proceedings due to the court's failure to hold a probable cause hearing within 72 hours of Bradley's custodial detention on the State's petition. Bradley argues that the court's failure deprived the court of jurisdiction and denied him due process of law.

Once the State files a petition to civilly commit an individual as an SVP, the probate court judge makes an initial determination as to "whether probable cause exists to believe that the person named in the petition is a sexually violent predator." § 632.489.1. "If such probable

cause determination is made, the judge shall direct that person be taken into custody and direct that the person be transferred to an appropriate secure facility, including, but not limited to, a county jail." *Id.* Then,

> [w]ithin seventy-two hours after a person *is taken into custody pursuant to subsection 1* of this section, excluding Saturdays, Sundays and legal holidays, such person shall be provided with notice of, and an opportunity to appear in person at, a hearing to contest probable cause as to whether the detained person is a sexually violent predator.

§ 632.489.2.  (Emphasis added.)

Thus, there are two probable cause determinations to be made in any given SVP commitment proceeding.  First, upon the filing of the petition, the judge must make a probable cause determination in order for the State to take the individual into custody.  Then, within 72 hours of when that custodial detention begins, the individual must be afforded a hearing in order to contest the initial determination of probable cause.  Following the hearing, the judge again makes a determination as to whether probable cause exists to believe the person is a sexually violent predator.

Here, the judge made the initial probable cause determination on May 24, 2011, and ordered that Bradley be taken into custody.  Included in that order was a date for Bradley's probable cause hearing, which was June 10, 2011.  Bradley was released from the Department of Corrections on June 9, 2011, and taken into the custody of the Jackson County Sheriff on the same day for purposes of the SVP proceedings.  Thus, under section 632.489.2, Bradley was entitled to a hearing to contest the initial probable cause finding no later than June 14, 2011.[7] His hearing, however, was not held until July 6, 2011.  He argues that the court's failure to hold the hearing within the 72-hour window deprived the court of jurisdiction.

---

[7] The record reflects that June 9, 2011, was a Thursday.  Because Saturday and Sunday do not count in the calculation of the 72-hour period, June 14, 2011, was the last day on which the hearing could have been held within the statutory time limit.

8

Normally, "[w]e review a trial court's refusal to dismiss on jurisdictional grounds for an abuse of discretion." *In re Care and Treatment of Perkins*, 175 S.W.3d 179, 179 (Mo. App. E.D. 2005). And we will "find an abuse of discretion when a trial court's ruling clearly violates the logic of the circumstances or is arbitrary or unreasonable." *Id*. Here, however, the State argues that Bradley waived this claim below by consenting to a date outside of the 72-hour window. But because Bradley claims that the trial court lost subject-matter jurisdiction after 72 hours, and because subject-matter jurisdiction cannot be waived, we must first discern whether the 72-hour time limit is jurisdictional. "'[A] question as to the subject-matter jurisdiction of a court is purely a question of law, which is reviewed de novo.'" *State ex rel. State v. Parkinson*, 280 S.W.3d 70, 75 (Mo. banc 2009) (quoting *Mo. Soybean Ass'n v. Mo. Clean Water Comm'n*, 102 S.W.3d 10, 22 (Mo. banc 2003)). Only after this determination can we determine whether Bradley waived this claim or whether the probate court abused its discretion in overruling his motion to dismiss.

There is a distinction between a jurisdictional defect and mere error. *Id.* If a petition to have a person declared to be an SVP is filed in the probate division of the circuit court in which he was convicted or previously committed, "[t]hat court has personal jurisdiction over him and subject[-]matter jurisdiction to determine SVP proceedings." *Id*. (citing §§ 632.486, 632.489, and 472.020). Any errors in fulfilling pre-trial requirements are just that: errors. *See id*. at 75-77. And they are subject to the general determinations of "whether that error caused a failure of proof, whether it was waived, [or] whether it was prejudicial and similar issues." *Id*. at 75.

There is no question that "[t]hose charged with duties under the [SVP law] should attempt to fulfill all such duties." *Id*. at 76. And "[i]f they intentionally fail to do so, or if they fail to correct their error when it timely is brought to their attention, it would be appropriate to

9

direct them to do so [by writ]." *Id*. "But that does not make every error in fulfilling pretrial . . . requirements a condition precedent to action on a petition, any more than errors in holding a preliminary hearing deprive a court of authority to conduct the trial[8] . . . ." *Id*. at 76-77. "It simply means that the error may be waived, and if not waived the issue of prejudice becomes a factual one." *Id*. at 77.

The question in *Parkinson* did not involve the timing of the probable cause hearing; rather, it discussed a pre-filing requirement that the psychologist conducting the end-of-confinement report be licensed in Missouri. *Id*. at 74-75. The Court determined that this requirement was not jurisdictional. *Id*. at 75. Although there are Missouri cases discussing the timing of the trial itself, we have located none discussing the effect of an untimely probable cause hearing. We have, however, found cases from other jurisdictions addressing the issue. For example, the Washington Supreme Court has held that "absent a possible change in the outcome, prior deprivation of a 72-hour probable cause hearing did not warrant reversal." *In re Detention of Campbell*, 986 P.2d 771, 777 (Wash. banc 1999). Thus, the Washington court found that the failure to comply with the 72-hour time limit was mere error and not a jurisdictional defect. Likewise, the Minnesota Supreme Court determined that mandatory timing provisions of its SVP law were not jurisdictional, even though they provided for dismissal and discharge for noncompliance. *In re Civil Commitment of Giem*, 742 N.W.2d 422, 426-31 (Minn. 2007).

Furthermore, the Missouri Supreme Court has rejected a claim that noncompliance with other timing requirements in an SVP proceeding resulted in a loss of jurisdiction. *In re Care and Treatment of Donaldson*, 214 S.W.3d 331, 333 (Mo. banc 2007). In *Donaldson*, the initial SVP

---

[8] *See State v. Caffey*, 438 S.W.2d 167, 172 (Mo. 1969) ("The preliminary examination, and all matters leading up to it, including unnecessary delay and adjournments for more than ten days at one time, are procedural matters which amount to irregularities but do not go to the jurisdiction of the court. Even the absence of a preliminary examination 'does not ipso facto deprive the circuit court of jurisdiction.'" (quoting *Lambus v. Kaiser*, 176 S.W.2d 494, 497 (Mo. banc 1943))).

proceeding resulted in a mistrial due to an insufficient number of qualified jurors. *Id*. at 332. Contrary to statute, the retrial did not occur within 90 days of the mistrial declaration. *Id*. The appellant sought dismissal, arguing that the SVP statutes were akin to the Uniform Mandatory Disposition of Detainers Law (UMDDL), which required the dismissal of a matter if the individual was not tried within the statutory time periods because the failure to comply with the time periods resulted in a loss of jurisdiction. *Id*. at 333. The Court disagreed, stating:

> These [UMDDL] sections amply demonstrate the legislature's ability to specify that dismissal is required if a time limit is not met. The absence of similar language in sections 632.492 and 632.495 negates finding any similar legislative intent to require dismissal if the 90-day time limit in these statutes is not met.

*Id*.

As with the 90-day limit for retrial following mistrial, there is no language in section 632.489 providing for dismissal if the 72-hour time period for the probable cause hearing is not met. Thus, according to the rationale of *Donaldson*, noncompliance does not divest a court of jurisdiction.

Bradley points to the New Hampshire Supreme Court's decision in *State v. Fournier*, 969 A.2d 434 (N.H. 2009), for support. In *Fournier*, the court determined that its SVP law's time limits (including those applicable to an initial probable cause determination) were jurisdictional and that noncompliance required dismissal for lack of jurisdiction. 969 A.2d at 439.

We are unpersuaded that the *Fournier* court's reasoning applies to Bradley's situation for two reasons: (1) New Hampshire's SVP law is procedurally distinct from Missouri's; and (2) New Hampshire does not determine jurisdiction the same way Missouri does. First, New Hampshire's statutory scheme for SVP civil commitment indicates that all commitment proceedings are to take place *before* the individual is released from incarceration on his criminal offenses. *Id*. at 438-39. Thus, the timing of the hearings carries a greater significance.

Second, New Hampshire determines whether a timing provision is jurisdictional based upon its intended purpose:

> When interpreting the goals of a statute, we have distinguished between two types of time limits: those involving a liberty interest and those involving "a general interest in hastening adjudicative dispositions." *Appeal of Martino*, 138 N.H. 612, 615-16, 644 A.2d 546 (1994). "Where the legislature, out of liberty interest concerns, has mandated time limits for holding hearings, we have held that personal jurisdiction over a defendant is lost, absent waiver, if the case is not heard within the statutory period." *Id.* at 615, 644 A.2d 546. "Where the legislature has prescribed time limits out of a general interest in hastening adjudicative dispositions for the benefit of all parties involved, however, we have been unwilling to treat the time limit as jurisdictional." *Id.* at 616, 644 A.2d 546.

*Id.* at 438.[9]

Jurisdiction in Missouri, however, is constitutionally determined. "Missouri courts recognize two kinds of jurisdiction: subject[-]matter jurisdiction and personal jurisdiction." *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 252 (Mo. banc 2009). "These two kinds of jurisdiction—and there are only two for the circuit courts—are based upon constitutional principles." *Id.* "Personal jurisdiction is, for the most part, a matter of federal constitutional law." *Id.* "Subject[-]matter jurisdiction is governed by article V of the Missouri Constitution." *Id.*

In light of the Missouri Supreme Court's holdings in *Parkinson*, *Donaldson*, and *Webb*, we discern no basis for determining that the 72-hour time limit for holding the probable cause hearing is a jurisdictional prerequisite to proceeding on the State's petition. Rather, it appears to be mere error, subject to waiver and requiring a showing of prejudice to warrant reversal. Thus, we turn to the State's argument that Bradley waived this claim of error.

---

[9] Notably, while *Fournier* treats the time limits under New Hampshire's SVP statute as "jurisdictional," it characterizes those time limits as a matter of *personal* jurisdiction, not as a matter of *subject-matter* jurisdiction. 969 A.2d 434, 438 (N.H. 2009). As recognized in the quoted passage, defects in *personal* jurisdiction are generally waivable by the defendant. *See also, e.g., Hope's Windows, Inc. v. McClain*, 394 S.W.3d 478, 483 (Mo. App. W.D. 2013); *Campbell v. Francis*, 258 S.W.3d 94, 98 n.1 (Mo. App. W.D. 2008). Therefore, even if we followed *Fournier* and treated the 72-hour requirement as "jurisdictional," Bradley's waiver of the 72-hour requirement, discussed below, would nonetheless be effective.

Following the court's initial probable cause determination, the State filed a motion to move the probable cause hearing to a different date (still within the 72-hour window) due to the unavailability of its expert witness on the scheduled date. Bradley's counsel consented to two of the three dates proposed by the State. The court's schedule, however, did not accommodate any of the agreed-upon dates within the 72-hour window. Consequently, Bradley's counsel consented to a setting outside of the 72-hour period, and the court's order reflects that Bradley, through counsel, "freely and voluntarily waive[d] his right to appear and contest probable cause as to whether he is a sexually violent predator within 72 hours."

The transcript of the probable cause hearing is not part of our record on appeal. Because it is Bradley's burden to provide us with this record and he has failed to do so, we assume that it is supportive of the probate court's decision below. *See Bruns v. Bruns*, 186 S.W.3d 449, 454 (Mo. App. W.D. 2006) ("'All evidentiary omissions in the record on appeal are presumed to support the trial court's decision.'" (quoting *Runny Meade Estates, Inc. v. Datapage Techs. Int'l, Inc.*, 926 S.W.2d 167, 168 n.2 (Mo. App. E.D. 1996))). Bradley has not argued that he raised any objection at the probable cause hearing regarding its timing. And, absent any record demonstrating that an objection was raised, we assume there was none.

The first objection or challenge that Bradley raised regarding the timing was approximately eighteen months *after* the probable cause hearing was held. Given that he proceeded with the untimely hearing without objection, we find this claim to be waived.

In his reply brief, Bradley argues that he did not consent to the continuance of the date and therefore did not need to show any resulting prejudice. Because the record supports that Bradley's counsel consented to the July 6, 2011 hearing date, we presume Bradley's argument is

that counsel could not waive the timing requirement on Bradley's behalf; rather, it was a right personal to Bradley that only he could waive.[10]

"What suffices for waiver depends on the nature of the right at issue." *New York v. Hill*, 528 U.S. 110, 114 (2000).[11] "'[W]hether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake.'" *Id*. (quoting *U.S. v. Olano*, 507 U.S. 725, 733 (1993)). "For certain fundamental rights, the defendant must personally make an informed waiver." *Id*. "For other rights, however, waiver may be effected by action of counsel." *Id*.

"To hold that every instance of waiver requires the personal consent of the client himself or herself would be impractical." *Gonzalez v. U.S.*, 553 U.S. 242, 250 (2008). "In most instances the attorney will have a better understanding of the procedural choices than the client; or at least the law should so assume." *Id*. at 249-50. "'Although there are basic rights that the

---

[10] In his motion to dismiss, Bradley also argued that attorney Schlegel entered his appearance on Bradley's behalf without first contacting Bradley or determining if Bradley qualified for the Public Defender's services. Thus, it appears that Bradley is also arguing that Mr. Schlegel could not waive the timing on Bradley's behalf because Mr. Schlegel was not, in fact, representing Bradley at the time of the waiver. According to the motion to dismiss, Mr. Schlegel did not represent Bradley before their first meeting on June 7, 2011. Bradley offered no evidence, however, to support this argument. Mr. Schlegel's entry of appearance on Bradley's behalf on May 26, 2011, is evidence that Mr. Schlegel represented Bradley at that time. There is simply no evidence to the contrary. Thus, we will not address the merits of this alternative argument.

[11] *Hill* and the other cases relied upon in this waiver discussion are criminal cases, addressing what rights counsel can waive on a criminal defendant's behalf. Generally, in civil cases (unlike criminal cases), clients are bound by the decisions of their attorneys and do not have the rights to personal waiver afforded to criminal defendants. *See Price v. State*, 422 S.W.3d 292, 302 (Mo. banc 2014) (noting that, in civil cases, "'[t]he attorney is the agent of the party employing him, and in the court stands in his stead, and any act of the attorney must from necessity be considered as the act of his client, and obligatory on the client.'" (quoting *Kerby v. Chadwell*, 10 Mo. 392, 393-94 (1847))). SVP proceedings, though civil, do afford individuals "many of the same rights of a criminal defendant, including a formal probable cause hearing, the right to a jury trial, the right to an attorney, and the right to appeal," *In re Care and Treatment of Van Orden*, 271 S.W.3d 579, 585 (Mo. banc 2008), and therefore *may* be entitled to greater protections when evaluating waiver. *But see People v. Wagoner*, 2001 WL 1528529, *7 (Cal. Ct. App. 2001) ("[T]he fact a particular proceeding may result in the involuntary confinement of an individual does not transform the proceeding into a criminal prosecution in which only a personal jury waiver is valid."); *Tyson v. State*, 249 S.W.3d 849, 853 (Mo. banc 2008) (finding the appellant's arguments equating probable cause hearings under the SVP Act with those in criminal matters "unpersuasive"). Regardless, Bradley cannot demonstrate a right to personal waiver even under the more stringent criminal law standards.

attorney cannot waive without the fully informed and publicly acknowledged consent of the client, the lawyer has—and must have—full authority to manage the conduct of the trial.'" *Hill*, 528 U.S. at 114-15 (quoting *Taylor v. Ill.*, 484 U.S. 400, 417-18 (1988)). "Scheduling matters are plainly among those for which agreement by counsel generally controls." *Id*. at 115. "Requiring express assent from the defendant himself for such routine and often repetitive scheduling determinations would consume time to no apparent purpose." *Id*.

We see no reason to believe that counsel, in this situation, could not consent to a continuance on Bradley's behalf. Counsel did not waive Bradley's right to a probable cause hearing; he merely waived the timing requirement of that hearing.[12]

Because the 72-hour time limit is not jurisdictional, noncompliance can constitute only mere error, which is subject to waiver. Here, Bradley waived his claim of error by failing to raise a timely objection to the court's noncompliance with the statutory time period.

Point II is denied.

**B. Section 632.483.5 does not preclude use of the MDT assessment in evidence.**

In his third point on appeal, Bradley claims that the probate court erred in excluding evidence regarding the MDT assessment because, contrary to the court's ruling, such evidence is not inadmissible under section 632.483.5. We agree.

At the outset, we must address the State's argument that this claim is not preserved for review due to Bradley's failure to make an offer of proof as to the excluded evidence at trial.

"Generally, appellate courts will not review excluded evidence without a specific and definite offer of proof." *Frank v. Envtl. Sanitation Mgmt., Inc.*, 687 S.W.2d 876, 883 (Mo. banc 1985). "The purpose of an offer of proof is twofold: [1] to educate the trial judge on the

---

[12] We express no opinion on whether the waiver of a probable cause hearing altogether can be effected by counsel, alone.

15

admissibility of the evidence with the hope that he or she will reconsider; and [2] to preserve the issue for appellate review." *LaFevers v. Clothiaux*, 403 S.W.3d 653, 657 (Mo. App. S.D. 2012). A proper offer of proof demonstrates: "1) what the evidence will be; 2) the purpose and object of the evidence; and 3) each fact essential to establishing the admissibility of the evidence." *State v. Tisius*, 92 S.W.3d 751, 767 (Mo. banc 2002).

"It follows[, however,] that the reason for a formal offer of proof does not exist if the trial court and counsel by other mean[s] are sufficiently advised as to what the testimony of the witness will probably be if he is allowed to testify." *State ex rel. State Highway Comm'n v. Ne. Bldg. Co.*, 421 S.W.2d 297, 300 (Mo. 1967). There are three requirements for applying this exception: "[f]irst, it requires a complete understanding, based on the record, of the excluded testimony[;] [s]econd, the objection must be to a category of evidence rather than to specific testimony[; and t]hird, the record must reveal the evidence would have helped its proponent." *Frank*, 687 S.W.2d at 883-84.

Here, we see no reason why Bradley needed to make an offer of proof. It is indisputable that the probate court knew the substance of the evidence, as the MDT assessment was an exhibit attached to the State's petition. The State's objection encompassed any and all aspects of the MDT's involvement and assessment; thus, it encompassed a category of evidence rather than specific testimony. And the MDT's unanimous assessment that Bradley did not appear to meet the definition of a sexually violent predator plainly would have aided Bradley's defense. Thus, the exception applies, and no offer of proof was required for Bradley to preserve this claim for appeal.

"Generally, a trial court has considerable discretion in admitting or excluding evidence." *St. Louis Cnty. v. River Bend Estates Homeowners' Ass'n*, 408 S.W.3d 116, 123 (Mo. banc

16

2013). And a reviewing court "gives deference to the trial court's evidentiary rulings and will reverse the trial court's decision about the admission or exclusion of evidence only if the trial court clearly abused its discretion." *Id.* Here, however, the court's decision to exclude evidence was based upon its construction of section 632.483.5. And "[w]e review matters of statutory construction *de novo*." *State v. Michael R. Thomas Bail Bond Co.*, 408 S.W.3d 794, 796 (Mo. App. W.D. 2013).

Section 632.483.5 states that "[t]he determination of the prosecutors' review committee or any member pursuant to this section or section 632.484 shall not be admissible evidence in any proceeding to prove whether or not the person is a sexually violent predator."

Bradley argues that this language precludes use of only the prosecutors' review committee determination in evidence and that it does not foreclose the possibility of using the MDT assessment. The State argued below, however, that the reference to "any member pursuant to this section" includes the MDT assessment in the statute's preclusion of evidence. The probate court agreed with the State's construction and did not allow Bradley to refer to or use the MDT assessment in his defense.

A brief overview of the statutory events leading to the filing of an SVP petition is necessary to our analysis. "When it appears that a person may meet the criteria of a sexually violent predator, the agency with jurisdiction shall give written notice of such to the attorney general and the [MDT] . . . ." § 632.483.1.

The notice sent by the agency with jurisdiction includes a variety of institutional, correctional, and treatment records, along with "[a] determination by either a psychiatrist or a psychologist . . . as to whether the person meets the definition of a sexually violent predator."[13] § 632.483.2. Within 30 days of receiving notice, the MDT "shall assess whether or not the

---

[13] This determination is often referred to as the end-of-confinement report.

17

person meets the definition of a sexually violent predator," and then "notify the attorney general of its assessment." § 632.483.4. The assessment is then provided to the prosecutors' review committee. § 632.483.5. This committee consists of "a cross section of [five] county prosecutors from urban and rural counties," one of whom "shall be the prosecuting attorney of the county in which the person was convicted or committed." *Id*. The prosecutors' review committee "review[s] the records of each person referred to the attorney general," and then "make[s] a determination of whether or not the person meets the definition of a sexually violent predator." *Id*.

If "it appears that the person presently confined may be a sexually violent predator and the prosecutor[s'] review committee . . . has determined by a majority vote[] that the person meets the definition of a sexually violent predator, the attorney general may file a petition" to have the person civilly committed as a sexually violent predator. § 632.486. "A copy of the assessment of the [MDT] must be filed with the petition." *Id*. Unlike the determination from the prosecutors' review committee, it does not appear that any particular finding—whether by majority vote or otherwise—is required from the MDT assessment before the State may file its commitment petition.[14]

The parties are in agreement, as are we, that section 632.483.5 clearly precludes the use of the prosecutors' review committee determination in evidence. The question that remains, however, is what the legislature meant by the phrase, "or any member pursuant to this section or section 632.484."

---

[14] Frankly, it is unclear to us what the actual purpose of the MDT assessment is, given that it does not appear to be a prerequisite to the State's decision to seek civil commitment. *Cf. Harden v. State*, 932 So. 2d 1152, 1156 (Fla. Dist. Ct. App. 2006) (finding that, under Florida's statutory language, the state was precluded from seeking civil commitment "in the absence of a recommendation from the MDT that the individual is a sexually violent predator").

18

At trial, the State argued that this phrase included the MDT assessment because the MDT constituted a "member pursuant to . . . section [632.483]." We disagree.

Although section 632.483 uses the term "members" to refer to the individuals comprising both the prosecutors' review committee and the MDT, section 632.483.5 precludes the use of only "determinations." According to section 632.483.4, the MDT does not make a determination—it makes an "assessment."[15] There are several individuals and entities in sections 632.483 and .484 that make "determinations" (e.g., the individual issuing the end-of-confinement report, the prosecutors' review committee, the probate court, and the department of mental health). But the MDT is not among these individuals and entities. Additionally, there is no mention whatsoever of the MDT in section 632.484; the only "members" referred to in section 632.484 are those forming the prosecutors' review committee. Thus, if we read the language, "any member pursuant to . . . section 632.484," to refer to the MDT, the statute would be nonsensical, as the MDT is not even part of section 632.484, and it does not make determinations of any kind. Consequently, section 632.483.5 does not preclude evidence regarding the MDT assessment.

A more reasonable reading of the reference to "the determination of . . . any member pursuant to this section or section 632.484" is that the vote of any particular member of the prosecutors' review committee when making its determination is not admissible to prove that an individual either is or is not a sexually violent predator. Given that the committee's determination need not be unanimous,[16] the plain intent of section 632.483.5 is to preclude evidence of not only the final determination but also the particular vote of each individual

---

[15] Section 632.483.4 directs the MDT to "*assess* whether or not the person meets the definition of a sexually violent predator" and then "notify the attorney general of its *assessment*," whereas subsection 5 directs the prosecutors' review committee to "make a *determination* of whether or not the person meets the definition of a sexually violent predator." (Emphasis added.)

[16] *See* § 632.486 (indicating that the determination need be made by only majority vote).

member in rendering the determination. Nothing in the statute precludes evidence of the MDT assessment. While this does not mean that the MDT report was necessarily admissible, it could not be excluded for the reason upon which the probate court relied.

Perhaps recognizing the fallacy of its argument below, the State has not advanced its statutory construction argument on appeal. Instead, the State argues that the assessment was otherwise inadmissible because it constituted hearsay. In other words, the State asks us to affirm based on the principle that the lower court reached the right result, even though it may have been for the wrong reason. *See, e.g., Sparks v. Sparks*, 417 S.W.3d 269, 280 (Mo. App. W.D. 2013). Though an attractive option, it is unworkable under these circumstances. Where, as here, the lower court excludes evidence based upon its belief that the evidence is precluded by statute without exception, the reality is that the opponent of the evidence will not offer further bases for exclusion and the proponent of the evidence simply has no reason to offer *any* bases for admissibility, given the court's representation that none exist.

Here, had the court overruled the State's objection, the State might then have argued—as it does on appeal—that the assessment was inadmissible as hearsay, and Bradley may then have responded with an applicable exception.[17] The problem with affirming the court's ruling based upon the State's hearsay argument on appeal is that the court's interpretation of section 632.483.5 simply left no room for argument from Bradley because, unlike a hearsay objection, the statute as applied allows for no exceptions. And had the hearsay question been addressed

---

[17] Attached to the State's petition, along with the MDT assessment, is an affidavit from a records custodian for the MDT, indicating that the assessment was a record kept in the regular course of business and made at or near the time of the event. Section 490.692.1 provides:

> Any records or copies of records reproduced in the ordinary course of business . . . shall be admissible as a business record, subject to other substantive or procedural objections, in any court in this state upon the affidavit of the person who would otherwise provide the prerequisites of sections 490.660 to 490.690, that the records attached to the affidavit were kept as required by section 490.680.

below, the result may have been different.[18] In short, absent preclusion of the evidence by the statute, it is unclear whether the MDT assessment would have been admissible below.[19]

The State further argues that even if the court erred in excluding the evidence, Bradley suffered no prejudice because the MDT assessment was cumulative to Bradley's other evidence. We disagree. One of Bradley's witnesses was a paid expert; in that sense, his opinion differed from those of the MDT members, who were not paid to represent any particular position. Bradley's other witness was the department of mental health evaluator, appointed by the court after finding probable cause. While he was not a paid expert, subject to the same kind of impeachment as Bradley's paid expert, it is not clear from the record that his evaluation was identical to those of the members of the MDT. And to the extent that the State was able to impeach his opinion, the MDT assessment may have served to rehabilitate him. Thus, it is not clearly cumulative.

In sum, the trial court erred in finding that the MDT evidence was inadmissible under section 632.483.5. Based upon the court's erroneous conclusion, no further record was developed regarding the admissibility of the MDT assessment evidence. Thus, we are unable to discern whether, absent the erroneous statutory interpretation, the court would have erred in excluding the evidence. Consequently, we reverse and remand for further proceedings consistent with this opinion.

_____

[18] We do not mean to express any opinion as to the report's admissibility, other than to hold that it is not *in*admissible by virtue of section 632.483.5. It may be inadmissible for other reasons, but because no other reasons were explored below, we lack a sufficient record to make this determination, and to do so would place us in the position of advocate for the State.

> As a court, we are obliged to remain impartial. We are not permitted to become a witting or unwitting adversary of [a party], fashion a theory we are not certain [the other party] pleaded, search the record on our own for evidence to support that theory and impose liability upon [the first party] without affording it any opportunity to challenge our strange conduct.

*Werdehausen v. Union Elec. Co.*, 801 S.W.2d 358, 368 (Mo. App. E.D. 1990).

[19] For example, in Kansas and Iowa, under similar statutory schemes, error was found in the admission of argument concerning, and evidence of, the MDT assessment that the respondents met the definition of sexually violent predators on the ground that this evidence invaded the province of the jury. *In re Care and Treatment of Foster*, 127 P.3d 277 (Kan. 2006); *In re Detention of Stenzel*, 827 N.W.2d 690 (Iowa 2013).

Point III is granted. In light of this disposition, we need not reach Bradley's first point regarding the sufficiency of the evidence.

## Conclusion

The probate court did not lose jurisdiction by holding the probable cause hearing outside the 72-hour window provided by section 632.489.2. The untimely nature of the hearing was simply error, waived by Bradley's consent to a hearing outside of the statutorily required time frame.

The court erred, however, in interpreting section 632.483.5 to preclude evidence regarding the MDT assessment. Due to the nature of the court's error, we cannot discern whether the actual exclusion of the evidence was erroneous. Thus, we reverse and remand for further proceedings consistent with this opinion. On remand, if evidence pertaining to the MDT assessment is again offered, the court must determine its admissibility.

_____
Karen King Mitchell, Judge

Joseph M. Ellis, Presiding Judge, and
Anthony Rex Gabbert, Judge, concur.