MODIFIED
July 28, 2015



In the
# Missouri Court of Appeals
## Western District

| | |
|---|---|
| IN THE MATTER OF THE CARE AND TREATMENT OF LARRY WALKER, | ) ) ) ) |
| | WD76976 |
| Appellant, | ) ) ) OPINION FILED: June 9, 2015 |
| v. | ) ) ) |
| STATE OF MISSOURI, | ) ) ) |
| Respondent. | ) |

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Kathleen A. Forsyth, Judge

Before Division Three: Victor C. Howard, Presiding Judge, James E. Welsh, Judge and
Gary D. Witt, Judge

Larry Walker ("Walker") appeals from the judgment of the Circuit Court of

Jackson County, following a unanimous jury verdict finding him to be a Sexually Violent

Predator ("SVP") pursuant to section 632.480(5).[1]  In his sole point on appeal, Walker

argues that the trial court erred when it excluded a report signed by the multidisciplinary

---

[1] All statutory references are to RSMo 2000 cumulative as currently supplemented, unless otherwise noted.

team ("MDT") in which the members of the team voted that Walker did not appear to meet the statutory definition of an SVP. We affirm.

## Factual and Procedural Background

In 2004, Walker committed sexual assault against an eighty-one-year-old female Alzheimer's patient who was in a diminished state and confined to her room. At the time, the victim lived in the same nursing home as then fifty-four-year-old Walker. On November 2, 2005, Walker pled guilty to sexual assault and sexual misconduct regarding that event and was incarcerated. After being granted parole, Walker absconded to Texas where he stayed for four months until he was arrested and sent back to prison to finish serving his sentence.

Before his scheduled release date of July 12, 2011, the Department of Corrections, pursuant to section 632.483.1, gave notice[2] to the attorney general that Walker appeared to meet the criteria of an SVP.[3] After notice was given, Walker's records were evaluated by the MDT and Prosecutors Review Committee ("PRC"). After the attorney general received their respective reports, he filed a petition seeking Walker's commitment to the Department of Mental Health as an SVP. Commitment to the Department of Mental Health is accomplished through an evaluation and review process as outlined in the Sexually Violent Predator Act, codified in sections 632.480 et seq., and culminates in a trial.

---

[2] Notice is typically given through the required "end of confinement" report.
[3] An SVP is defined by statute as "any person who suffers from a mental abnormality which makes the person more likely than not to engage in predatory acts of sexual violence if not confined in a secure facility" and who "has pled guilty or been found guilty . . . of a sexually violent offense ." § 632.480(5)(a).

Walker's history of sexual assaults began in 1964, and included a nineteen-year-old pregnant waitress whom he raped at gunpoint at a diner then forced her to serve him coffee and call him a cab, as well as five teenaged girls whom he self-reported to therapists as raping between 1964 and 1971 when he was in his 20's. He was also arrested at least seventeen other times for crimes including assault and battery, aggravated assault, making a terrorist threat, as well as non-violent crimes including forgery, resisting arrest, robbery, larceny, burglary, drug possession, receiving stolen property and solicitation of prostitution.

At trial, only one of the three expert witnesses called by either party was able to personally evaluate Walker because he refused to be interviewed by the other two experts or cooperate with them in an evaluation. The State presented one expert, Dr. Amy Swan, a forensic psychologist. She reviewed over three thousand pages of documents relating to Walker including court records, Department of Correction records, police reports, treatment records and probation and parole records. She diagnosed Walker with paraphilia not otherwise specified, non-consent as well as alcohol dependence and personality disorder not otherwise specified with antisocial features. Walker's diagnosis means that he is sexually stimulated and desirous of having sexual relations with persons who do not consent to sex. Dr. Swan noted that Walker's repeated arrests and parole violations were an indicator of a greater risk to reoffend. She diagnosed Walker with a mental abnormality and opined that within a reasonable degree of medical certainty he would engage in predatory acts of sexual violence if not placed in a secure facility.

3

Walker called two expert witnesses. His first witness was Dr. Jeanette Simmons, a clinical psychologist, who diagnosed Walker with paraphilia not otherwise specified, which she based on Walker's self-reporting of sexual assaults and on his convictions, which spanned forty years, of "committing sexual offenses with individuals who were not consenting persons in one form or another." Dr. Simmons testified that Walker had a mental abnormality, but that, in her opinion, he was not more likely than not to engage in predatory acts of sexual violence if released. Dr. Simmons also diagnosed Walker with adult antisocial behavior based, in part, on his seventeen past arrests.

Walker's second expert was Dr. Jarrod Steffan, a psychologist who reviewed Walker's records and conducted a two-hour interview of him. Dr. Steffan testified that the "most pertinent" requirement under Missouri law for commitment as an SVP is whether the offender is suffering from a mental abnormality that makes him more likely than not to engage in predatory acts of sexual violence if not confined to a secure facility. Dr. Steffan diagnosed Walker with alcohol dependence and personality disorder not otherwise specified. Although he opined that Walker was not more likely than not to engage in predatory acts, he acknowledged that Walker's diagnosis of personality disorder qualified Walker as having a mental abnormality.

The jury returned a unanimous verdict, finding by clear and convincing evidence that Walker was an SVP.[4] The court accepted the verdict and ordered Walker committed to the Missouri Department of Mental Health for control, care and treatment. Walker timely appeals.

---

[4] Section 632.495 states that the verdict must be unanimous and based on clear and convincing evidence.

## Analysis

In his sole point, Walker argues that the trial court abused its discretion when it sustained the State's objection and excluded the MDT report because "an expert's opinion is not objectionable merely because it embraces an ultimate issue to be decided." He also contends that the exclusion of the report prejudiced him.

## Standard of Review

"The burden of proof in civil commitment proceedings is clear and convincing evidence." *In re Muston*, 350 S.W.3d 493, 496 (Mo. App. S.D. 2011). Our review of a sexually violent predator finding is limited to a determination of whether there was sufficient evidence from which a reasonable fact finder could find each necessary element under section 632.486. *Bemboom v. State*, 326 S.W.3d 857, 859 (Mo. App. W.D. 2010). "Matters of credibility and weight of testimony are for the fact finder to determine." *Id.* (quoting *In re Care and Treatment of Barlow v. State*, 250 S.W.3d 725, 733 (Mo. App. W.D. 2008)). As such, "the evidence is viewed 'in the light most favorable to the judgment, accepting as true all evidence and reasonable inferences favorable to the judgment and disregarding all contrary evidence and inferences.'" *Id.*

At trial, the proponent of evidence bears the burden of establishing its admissibility. *Nolte v. Ford Motor Co.*, No., 458 S.W.3d 368, 381 (Mo. App. W.D. 2014) (citation omitted). The trial court's ruling on the admissibility of evidence is reviewed for a clear abuse of discretion. *Lozano v. BNSF Ry. Co.*, 421 S.W.3d 448, 451 (Mo. banc 2014) (citation omitted). A trial court abuses this discretion when its "ruling is clearly against the logic of the circumstances then before the court and is so unreasonable

5

and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Id.* (citation omitted).

The admission and exclusion of expert testimony in civil cases in Missouri is governed by section 490.065. *Kivland v. Columbia Orthopaedic Group,* 331 S.W.3d 299, 310 (Mo. banc 2011) (citation omitted). The statute provides that the circuit court is responsible for determining whether (1) the expert is qualified; (2) the expert's testimony will assist the trier of fact; (3) the expert's testimony is based upon facts or data that are reasonably relied on by experts in the field; and (4) the facts or data on which the expert relies are otherwise reasonably reliable. *Id.* at 310-11; § 490.065.

### Discussion

In his point relied on, Walker argues that the court "abused its discretion when it determined that the MDT report was not admissible because the MDT did not render expert testimony but only offered an opinion on the ultimate issue in the case and this was not permitted under the general rules of evidence." He then contends that the report provided expert testimony because "the members of the MDT are experts under Section 490.065.1 because they are psychologists and psychiatrists employed by the Department of Corrections and Department of Mental Health." There is no further argument as to how or why the members of the MDT are qualified as experts such that their individual votes on whether Walker appears to meet the legal definition of an SVP constitutes the rendering of expert testimony. Further, there is no citation to any point in the record where the individual members of the MDT were qualified as experts before the trial court.

6

The MDT report at issue is a standard administrative report that is completed by the MDT in response to the end-of-confinement report generated by the Department. It is a one-page report titled "MDT Assessment Form" that contains each member's vote and signature as to whether he or she believes the offender meets the criteria for an SVP. § 632.484.4. The report states that the "vote" reflected on the bottom half of the form should be taken after each member has reviewed records relating to the sex offender's (1) qualifying offense(s); (2) history of other sexual assault(s); (3) history of other criminal convictions; (4) documentation of any mental disorder(s), and (5) institutional adjustment. It also expressly states that the findings of the team "are strictly based on the legal criteria set forth in Section 632.480 et seq., the Sexually Violent Predator Act, and should not be construed as clinical assessment." The records were reviewed by the MDT and the four members of the MDT each voted that Walker did not appear to meet the definition of an SVP. The report contains only the members votes; it does not contain any analysis as to how the members of the MDT arrived at their individual conclusions.

At the pretrial hearing, the State argued that the MDT report was inadmissible based on section 632.483(5), which provides that "[t]he determination of the prosecutors' review committee or any member pursuant to this section or section 632.484 shall not be admissible evidence in any proceeding to prove whether or not the person is a [SVP]." It also argued that the MDT did not conduct a clinical examination of Walker and thus its members conclusions were inadmissible as they constituted a conclusion on the ultimate issue and invaded the province of the jury.

7

The trial court ruled consistent with our recent decision in *Bradley v. State*, 440 S.W.3d 546, 556 (Mo. App. W.D. 2014) that section 632.483.5 does not apply to the MDT report because the statute only expressly excludes the PRC report from evidence. *Id.* The trial court did, however, find that because the report offered an "opinion on the ultimate issue," it was otherwise inadmissible. The court further stated that the MDT members were not offering expert testimony but that Walker was welcome to call the members as experts "if [he thinks] they have looked at enough information to form an expert opinion,[] I don't know whether they have or not." It concluded by noting that none of the members of the team had performed an evaluation of Walker.

Even though invited to do so by the trial court, Walker did not list any member of the MDT as an expert during discovery, he did not depose any member of the team, nor did he call any member to testify regarding the MDT report. In other words, Walker did not attempt to lay the foundation for the MDT report nor qualify any of the MDT members as an expert. Instead, he opted to have another witness, Dr. Simmons, testify about the report in an offer of proof.

Dr. Simmons testified that she had heard of two of the four MDT members who had signed the form, or "vote," as she described it. She stated that Dr. Gowdy was a psychologist and Dr. Parker was a psychiatrist. Simmons did not state that she relied on the MDT's vote or on the report in formulating her expert opinion, nor did she state that the MDT report is the type of report normally relied upon by experts in her field. When asked whether the report, which was one of several thousand pages of documents she reviewed, was something she "gave credence to," Dr. Simmons replied: "I think I give

8

credence to every document that's provided to me at the time I do my evaluation, so you know, to say that I weigh one thing more than another, I don't believe that would be fair, but I did look at all of that information." After the offer of proof concluded, Walker moved to admit the MDT report. Consistent with its earlier ruling, the court accepted the offer of proof but excluded the report as evidence before the jury.

The trial court found that the MDT members were "not really rendering expert testimony, they're just offering opinion on the ultimate issue and I won't let them do that." We agree. Walker elicited no testimony from Dr. Simmons regarding the "knowledge, skill, experience, [or] training" of any member of the MDT. While all four doctors may, in fact, be qualified, the only evidence presented in Walker's offer of proof was that they were employed as doctors by state agencies. Employment, however, is not listed as one of the ways by which an expert can be qualified. § 490.065.1.[5]

Based on the facts of this case, we find no error in the court's exclusion of the MDT report because none of the members of the team were offered or qualified by Walker to testify as experts, none were called to testify regarding the report or how it was prepared, there was no evidence as to why each member voted "no," no expert testified that she or he relied upon the report in formulating an opinion and no expert testified that reports of this type are relied upon by experts in this medical field.[6]

---

[5] Section 490.065.1 states that a witness may be qualified as an expert "by knowledge, skill, experience, training or education. . . . "

[6] "The facts or data on which an expert relies do not need to be independently admissible" if the evidence satisfies the requirements of section 460.065.3." *8000 Maryland,LLC v. Huntleigh Fin. Servs. Inc.*, 292 S.W.3d 439, 446 (Mo. App. E.D. 2009) (citation omitted). Thus, each of these propositions, if met, could have made a report of this nature admissible under the correct circumstances.

Although misstated by Walker, the trial court did *not* find that the MDT report contained *expert* opinions going to the ultimate issue—it found only that the report contained opinions on the ultimate issue. The report was properly excluded because it consisted of non-testifying persons' opinions that had not been properly qualified as expert opinion that went to the ultimate issue without any support for how those individuals reached their opinions. Because the trial court's ruling was correct, we find no error.

This point is denied.

## Conclusion

Based on the foregoing, the judgment is affirmed.

_____
Gary D. Witt, Judge

All concur

10